O’Connor, C.J.
{¶ 1} In this case, which is before us on the certification of state-law questions by the United States District Court for the Northern District of Ohio, Western Division, we address whether the Ohio Consumer Sales Practices Act (“CSPA”), codified in R.C. Chapter 1345, applies to the servicing of residential mortgage loans. We determine that it does not.
Relevant Background
{¶2} The federal court provided the following facts, circumstances, and allegations from which the questions of law arise:
{¶ 3} Barclays Capital Real Estate, Inc., doing business as HomEq Servicing (“HomEq”), defendant in the underlying action and petitioner here, is a “mortgage servicer” that engages in the business of servicing residential mortgages of individuals. HomEq is not a bank, financial institution, or any other entity defined in R.C. 5725.01.
{¶ 4} HomEq “accepts, applies and distributes mortgage loan payments and other fees, penalties and assessments, and in connection with so doing exercises discretion regarding the fees charged or applied to a particular mortgage loan account.” HomEq is paid for its loan administration and other services “from the payment stream generated by the consumers’ residential mortgages.”
{¶ 5} HomEq “maintains customer service departments and call centers to which Ohio residents with loans being serviced by HomEq are directed to call with questions [or] concerns about their mortgage loans” and “directs customers who are in default or danger of default to contact it for options concerning loss *33 mitigation or loan modification and further holds itself out as having authority to make substantive decisions regarding which customers, if any, will receive loan modification agreements or loss mitigation assistance.” HomEq “handles consumer disputes regarding their mortgage loans,” “negotiates and executes loan modification, forbearance and other agreements directly with customers,” and “makes customer service related promises on its website to which consumers are directed by the servicer.” It also “purchases homeowner’s insurance on behalf of, and at the expense of, consumers who HomEq believes not to have purchased insurance required by the note and mortgage.”
{¶ 6} The federal court determined that the interpretation of R.C. 1345.01(A) and (C) may be determinative of the case pending before it. Finding no controlling precedent on the determinative issue in Ohio case law, the federal court certified the following questions to us for answers:
1. Does the servicing of a borrower’s residential mortgage loan constitute a “consumer transaction” as defined in the Ohio Consumer Sales Practices Act, R.C. 1345.01(A)?
2. Are entities that service residential mortgage loans “suppliers * * * engaged in the business of effecting or soliciting consumer transactions” within the meaning of the Ohio Consumer Sales Practices Act, R.C. § 1345.01(C)?
{¶ 7} Before us, Sondra Anderson, plaintiff in the underlying action, contends that mortgage servicing is a “consumer transaction” because the mortgage servicer provides a number of services to borrowers, including accepting payments and working with borrowers to obtain loan modifications. She asserts that we must answer the certified questions in the affirmative. But HomEq counters that mortgage servicers perform services for financial institutions, not for borrowers, and therefore the transactions are commercial in nature and are not covered by the CSPA. It thus avers that we must answer the questions in the negative. For the reasons that follow, we agree with HomEq.
Analysis
{¶ 8} The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction. R.C. 1345.02(A) and 1345.03(A); Williams v. Spitzer Autoworld Canton, L.L.C., 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 10. The CSPA defines a “consumer transaction” to be *34 a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. “Consumer transaction” does not include transactions between persons, defined in sections 4905.03 and 5725.01 [financial institution defined] of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.
R.C. 1345.01(A).
{¶ 9} The CSPA is remedial in nature, having been designed to compensate for incomplete consumer remedies available at common law. Einhorn v. Ford Motor Co., 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990); see Roberts & Martz, Consumerism Comes of Age: Treble Damages and Attorney Fees in Consumer Transactions — The Ohio Consumer Sales Practices Act, 42 Ohio St.L.J. 927, 928 (1981). Thus, we must liberally construe the statute in favor of the consumer. Whitaker v. M.T. Automotive, Inc., 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 11, quoting Einhorn at 29; see also R.C. 1.11.
{¶ 10} Notably, however, the CSPA has no application in a “pure” real estate transaction. Brown v. Liberty Clubs, Inc., 45 Ohio St.3d 191,193, 543 N.E.2d 783 (1989). In fact, real estate transactions are excluded from the statute’s definition of “consumer transaction.” R.C. 1345.01(A); see Shore W. Constr. Co. v. Sroka, 61 Ohio St.3d 45, 48, 572 N.E.2d 646 (1991); Heritage Hills, Ltd. v. Deacon, 49 Ohio St.3d 80, 551 N.E.2d 125 (1990).

Is servicing of a borrower’s residential mortgage loan a “consumer transaction”?

{¶ 11} The first question asks whether the servicing of a borrower’s residential mortgage loan constitutes a “consumer transaction” as defined in the Ohio Consumer Sales Practices Act, R.C. 1345.01(A)? It does not.
{¶ 12} In the servicing of a real estate mortgage, one essential element of R.C. 1345.01(A) is not met: there is no sale, lease, assignment, award by chance, or other transfer of a service to a consumer.
*35 {¶ 13} Mortgage servicing is a contractual agreement between the mortgage servicer and the financial institution that owns both the note and mortgage. Mortgage servicing is carried out in the absence of a contract between the borrower and the mortgage servicer. We recognize that the mortgage servicer’s duties may involve direct and indirect interactions with borrowers on behalf of the financial institution. Sometimes the mortgage servicer may even assist the borrower in modifying the terms of the note, but the mortgage servicer undertakes the negotiation not for itself but on behalf of the financial institution.
{¶ 14} These interactions do not satisfy the language found in R.C. 1345.01(A). Instead, mortgage servicing, similar to appraisal services and title services, is a “collateral service” associated with a pure real estate transaction. Except for the transactions specified in the statute, the CSPA does not apply to “collateral services that are solely associated with the sale of real estate and are necessary to effectuate a ‘pure’ real estate transaction.” U.S. Bank v. Amir, 8th Dist. No. 97438, 2012-Ohio-2772, 2012 WL 2355620, ¶ 42-43, citing Hurst v. Ent. Title Agency, Inc., 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, ¶ 34-35 (holding that the escrow services involved were collateral services related to the real estate transaction and that they were therefore not subject to the CSPA), citing Colburn v. Baier Realty & Auctioneers, 11th Dist. No. 2002-T-0161, 2003-Ohio-6694, 2003 WL 22931379, ¶ 16. See also Hanlin v. Ohio Builders & Remodelers, Inc., 212 F.Supp.2d 752, 757 (S.D.Ohio 2002) (closing services were “part and parcel of the real estate transaction” and thus outside the CSPA).
{¶ 15} Moreover, transactions between mortgage-service providers and homeowners are not “consumer transactions” within the meaning of the CSPA because there is no “transfer of an item of goods, a service, a franchise, or an intangible, to an individual.” See R.C. 1345.01(A) (“ ‘Consumer transaction’ means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things”). A financial institution may contract with a mortgage servicer to service the loan, but the mortgage servicer does not transfer a service to the borrower, which is what would be required in order to trigger the CSPA.
{¶ 16} The term “transfer” is not defined in the CSPA, so we must give it its plain and ordinary meaning. See State v. Anthony, 96 Ohio St.3d 173, 2002-Ohio-4008, 772 N.E.2d 1167, ¶ 11. Black’s Law Dictionary defines the term to mean “[t]o sell or give.” Black’s Law Dictionary 1636 (9th Ed.2009).
{¶ 17} Here, the mortgage servicer neither sells nor gives the borrower the services it provides to the owner of the mortgage and note. A mortgage servicer provides a service to a financial institution, but providing such a service to a financial institution is neither analogous to transferring a service to a borrower *36 nor sufficient to impose liability under the CSPA. See Rossbach v. FBS Mtge. Corp., Minn.App. Nos. C3-97-1622 and C9-97-1852, 1998 WL 156303, *3 (Apr. 7, 1998) (affirming order granting summary judgment to mortgage servicer on state consumer-protection-act claims because the mortgage servicer operated through a contract with the entity that owned the mortgage on plaintiffs home). Accord Indep. Glass Assn., Inc. v. Safelite Group, Inc., D.Minn. No. 05-238, 2005 WL 2093035 *7 (Aug. 26, 2005) (dismissing claim of violation of state consumer-protection laws where the defendant was a third-party administrator who was “fulfilling a contractual obligation” to insurers and noting that the administrator “provides the service for the benefit of the insurance companies” rather than the insureds, and thus there was no service provided to the consumer). Thus, under a plain reading of the statute, the servicing of a borrower’s residential mortgage loan is not a “consumer transaction” as defined in R.C. 1345.01(A). The statute simply cannot be read to cover instances in which a financial institution contracts with an entity to service its loans and mortgages.
{¶ 18} Our conclusion is buttressed by the commentary to the Uniform Consumer Sales Practices Act, on which the CSPA is modeled. The commentary states, “On the assumption that land transactions frequently are, and should be, regulated by specialized legislation, they are excluded altogether.” 7A, Part I, National Conference of Commissioners on Uniform State Laws, Uniform Laws Annotated, Business and Financial Laws, Uniform Consumer Sales Practices Act, Official Comment to Section 2(1), at 73 (Master Ed.2002). The transactions presented here include the acceptance and application of mortgage payments and management of loans in default. Those transactions do not cease to be part of the land transaction simply because an entity that did not originate the loan and mortgage executes them.
{¶ 19} Further, other states that have enacted a consumer-sales-practices act based on the uniform act included specific language referring to land transactions in the statutes when they wanted real estate transactions to be covered. See, e.g., Kan.Stat.Ann. 50-624(c) and (j) (defining “consumer transaction” to mean “disposition for value of property” and defining “property” to include real estate). Ohio did not. That omission is important.
{¶ 20} In past decisions interpreting the CSPA, we have taken note of the General Assembly’s decision not to include certain language. For example, in Heritage Hills, we rejected a residential tenant’s attempt to bring her complaint against her landlord within the ambit of R.C. Chapter 1345. In so doing, we recognized that the General Assembly had considered, but not enacted, a bill that would have included the lease of real property within the definition of “consumer transaction.” 49 Ohio St.3d at 82-83, 551 N.E.2d 125.
*37 {¶ 21} Here, we recognize that the General Assembly has repeatedly amended R.C. Chapter 1345 to reach specific transactions that take place in the mortgage industry. But it has chosen not to incorporate mortgage services within the expanded definition of transactions subject to CSPA’s provisions.
{¶ 22} For example, the General Assembly, through Am.Sub.S.B. No. 185 (“S.B. 185”), amended R.C. 1345.01(A), effective in 2007, to expressly include three types of entities actively engaged in the residential mortgage market that were not previously subject to the CSPA: loan officers, mortgage brokers, and nonbank mortgage lenders. But, notably, the legislature has not expanded the application of the CSPA to include mortgage servicers.
{¶ 23} Indeed, after S.B. 185 passed, the 128th General Assembly considered a bill that would have brought more extensive regulation to mortgage servicers and included them within the ambit of the CSPA. Am.Sub.H.B. No. 3. That bill was not enacted, however.
{¶ 24} We will not speculate as to why the bill failed. But we do take notice of the fact that the legislative branch considered and rejected an amendment to the statutory scheme that would have specifically made mortgage servicers liable under the CSPA.
{¶ 25} We conclude that the General Assembly’s rejection of the proposed amendment supports our conclusion that mortgage servicers are not covered by the current language of R.C. Chapter 1345.[1] If the General Assembly is dissatisfied with our interpretation, it may amend the Revised Code. See, e.g., Shay v. Shay, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 25 (noting that within six months of a decision interpreting R.C. 3937.31, the General Assembly responded by amending R.C. 3937.31).
{¶ 26} We turn now to the second certified question.

Is a mortgage servicer a “supplier”?

{¶ 27} The second question presented asks, “Are entities that service residential mortgage loans, ‘suppliers * * * engaged in the business of effecting or soliciting consumer transactions’ within the meaning of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01(C)?” We hold that they are not.
{¶ 28} Anderson’s argument centers on her belief that because servicers like HomEq engage in transactions with borrowers, and essentially function as *38 collection agencies, they are “suppliers” under the CSPA. But the term “supplier” under the CSPA does not include a mortgage servicer.
{¶ 29} “ ‘Supplier’ means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer.” R.C. 1345.01(C). The terms “effecting” and “soliciting” are not defined by the statute, so we give the terms their plain and ordinary meanings.
{¶ 30} “Effect” is defined as “[t]o bring about; to make happen.” Black’s Law Dictionary at 592. “Solicitation” is defined as “[t]he act or an instance of requesting or seeking to obtain something; a request or petition.” Black’s at 1520. Thus, under the CSPA, “suppliers” are those that cause a consumer transaction to happen or that seek to enter into a consumer transaction.
{¶ 31} Here, HomEq does not engage in the business of effecting or soliciting consumer transactions. The residential mortgage transaction is a transaction that occurs between the financial institution and the borrower. Mortgage servicers are not part of this transaction. And simply servicing the mortgage is not causing a consumer transaction to happen. Similarly, mortgage servicers do not seek to enter into consumer transactions with borrowers.
{¶ 32} We therefore have little trouble concluding that an entity that services a residential mortgage loan is not a “supplier” as defined in R.C. 1345.01(C).
Conclusion
{¶ 33} We answer both of the certified state-law questions in the negative. Mortgage servicing is not a consumer transaction under the CSPA, and an entity that services a residential mortgage loan is not a “supplier” under the CSPA.
So answered.
O’Donnell, Lanzinger, and Kennedy, JJ., concur.
French, J., concurs in judgment only.
Pfeifer and O’Neill, JJ., dissent.

. Amici curiae, including legal-aid organizations that are concerned about the number of foreclosures that continue to take place in Ohio, raise some thought-provoking arguments. And we accept for the sake of argument that regulation may be warranted. But it is the legislature’s role, not ours, to bring mortgage servicers within the CSPA’s scope.