NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0276n.06

No. 13-3799

## UNITED STATES COURTS OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>LINDA CLARK; JOHN W. WHITEMAN;<br>MICHAEL C. RYSH; DOROTHY L. RYSH,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td style="padding-left:2em">Plaintiffs-Appellants,</td><td>)<br>)</td><td rowspan="3"><strong>FILED</strong><br>Apr 14, 2014<br>DEBORAH S. HUNT, Clerk</td></tr>
<tr><td>and</td><td>)<br>)</td></tr>
<tr><td>LAURA YEAGER; MICHAEL YEAGER</td><td>)<br>)</td></tr>
<tr><td style="padding-left:2em">Plaintiffs,</td><td>)<br>)</td><td></td></tr>
<tr><td>v.</td><td>)<br>)</td><td>ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE</td></tr>
<tr><td>LENDER PROCESSING SERVICES; LPS<br>DEFAULT SOLUTIONS; DOCX, LLC; LERNER,<br>SAMPSON & ROTHFUSS; MANLEY, DEAS<br>KOCHALSKI, LLC,</td><td>)<br>)<br>)<br>)<br>)</td><td>NORTHERN DISTRICT OF<br>OHIO</td></tr>
<tr><td style="padding-left:2em">Defendants-Appellees,</td><td>)<br>)</td><td></td></tr>
<tr><td>and</td><td>)<br>)</td><td></td></tr>
<tr><td>REIMER, ARNOVITZ, CHERNEK & JEFFREY<br>CO.,</td><td>)<br>)<br>)</td><td></td></tr>
<tr><td style="padding-left:2em">Defendant.</td><td>)</td><td></td></tr>
</table>

BEFORE:     COLE and ROGERS, Circuit Judges; HOOD, District Judge.[*]

ROGERS, Circuit Judge.  The plaintiffs are Ohio homeowners who were defendants in foreclosure suits filed during the financial crisis.  Their underlying challenge is to the effectiveness of the series of assignments of mortgage documents, which plaintiffs say led to

_____

[*] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

violations of federal and state law. However, statements made by the defendants in this case that they had a right to foreclose under Ohio law were not materially misleading so as to violate federal fair debt collection law (at least as to the two appellants in this case who brought such federal law claims), because the foreclosing parties *did* have standing to foreclose, despite any irregularities in the assignments. The plaintiffs' state law claims moreover cannot succeed because the defendants—a vendor that provides services to mortgage servicers and lenders, its subsidiaries, and two law firms—are not suppliers involved in consumer transactions for purposes of the Ohio Consumer Sales Practices Act. For these reasons, the district court properly granted summary judgment to the defendants.

The background, facts, and procedural history of this suit are well set out by the district court as follows:

> [T]he named Plaintiffs are individuals whose homes were foreclosed in cases where it appears beyond dispute that the mortgage assignments, affidavits, and transfers were fabricated by one or more of the loan processing Defendants, and the financial institutions bringing the foreclosure actions were represented by one of the law firm Defendants. Plaintiffs bring a putative class action claiming that Defendants violated the FDCPA and OCSPA by filing state court foreclosure lawsuits on behalf of trustees of securitized trusts. Plaintiffs' theory of the case is that the foreclosing trusts lacked standing to bring foreclosure actions against Plaintiffs because (1) the transfer of their mortgages to non-party securitized trusts did not comply with the alleged deadlines in the applicable Pooling and Servicing Agreements ("PSAs"), and (2) Defendants conspired to create the appearance of standing, after the trusts had lost standing, by using allonges to notes, mortgage assignments, and other mortgage documents that were defectively executed, thereby breaking the chain of title. Plaintiffs bring this action on behalf of a proposed class consisting of:

> > All Ohio homeowners who were (a) defendants in judicial foreclosure actions on first lien mortgages that were purportedly held by securitization trusts, and that were knowingly initiated and prosecuted by Defendants on behalf of parties that lacked legal standing to do so, and (b) who were damaged by Defendants' abusive debt collection practices, including: (i) preparing, executing, and notarizing fraudulent court documents and assignments of mortgages and other property records that were

used to initiate and prosecute such foreclosures, and (ii) imposing inflated, unfair, unreasonable and/or fabricated fees for "default management services" (the "Class").

[Compl. ¶ 1].

Plaintiffs allege that "[t]wo categories of defendants acted in concert and conspired in furtherance of the fraudulent scheme to generate enormous profits from default servicing fees by knowingly initiating foreclosure actions on behalf of entities that lacked standing to bring such actions." [Compl. ¶ 2]. The first category of Defendants is the loan processing Defendants, [Lender Processing Services]. Plaintiffs allege that the loan processing defendants are "vendors or sub-servicers to the vast majority of national mortgage services to manage all default servicing for those servicers." (*Id.*) The second category of Defendants is an alleged network of law firms, here [Manley, Deas Kochalski, LLC] and [Lerner, Sampson & Rothfuss]. Plaintiffs allege that law firm Defendants "specialize in prosecuting a high volume of foreclosure cases, and are commonly known as 'foreclosure mills.'" (*Id.*) Plaintiffs allege that the law firm Defendants entered into a "Network Agreement" with [Lender Processing] which "requires these law firms to pay *quid pro quo* consideration to [Lender Processing] for referrals of foreclosure cases and other default related matters . . ." (*Id.*) Plaintiffs further allege that law firm Defendants "were not only retained by defendant [Lender Processing], they were also supervised and directed by [Lender Processing], and knowingly used forged and fabricated documents created by or at the direction of [Lender Processing] and/or its subsidiaries." (*Id.*)

The [complaint] describes the national housing collapse, the mortgage foreclosure crisis, and the role of the [Lender Processing] Defendants who allegedly fabricated mortgage assignments, fraudulently endorsed affidavits, backdated mortgage transfers and did whatever was necessary to support standing for its clients (i.e., the financial institutions bringing foreclosure actions against defaulting mortgagors). The [complaint] also describes the role of the law firm Defendants who allegedly paid the [Lender Processing] Defendants for foreclosure referrals and allegedly knew or should have known these standing-supporting documents were fabricated and their clients lacked standing. The crux of Plaintiffs' allegations is as follows:

The Defendants have engaged in a widespread conspiracy to deceive the Ohio courts and borrowers by engaging in unfair and deceptive debt collection practices, including fabricating thousands of mortgage assignments and affidavits. **These fraudulent documents purported to establish the required intervening note endorsement and transfers of the mortgages to the trusts, thereby giving the illusion of "standing".** If these transfers had actually occurred on the dates the documents were fabricated, they would have been void inasmuch as they were not

made pursuant to the terms of the governing documents and the Trustees were not permitted to accept late and out of time assignments.

In furtherance of this deceptive scheme, from at least 2006 until the present, Defendants have knowingly and intentionally prepared and filed or caused to be filed these fabricated mortgage assignments and other mortgage documents with courts and county recorder of deed's office across the country, including in Ohio, and have produced them to borrowers across the nation, including in Ohio.

From at least 2006 to the present, [Lender Processing] and its network of law firms have used these fabricated note indorsements, mortgage assignments and affidavits to conceal the fact that the trusts, which purport to hold the notes and mortgages, are missing critical documents, namely, properly endorsed notes and valid mortgage assignments that were supposed to have been delivered to the trusts within 90 days of the closing of the trust.

These note endorsements and mortgage assignments were materially false and misrepresented that Defendants' clients had standing to foreclose when they did not. Defendants knew or should have known of the falsity of the representations in these documents, yet Defendants used these fabricated documents to foreclose on Ohio homeowners, with the intent to deceive borrowers and the courts who justifiably believed that these fabricated and forged documents were valid.

[Compl. ¶¶ 11–14] (emphasis in original, footnote omitted).

Plaintiffs allege that many of the Ohio homeowners who comprise the Class were unaware that the documents were forged and that the foreclosing parties lacked standing. Plaintiffs allege that, as a result, homeowners have lost their homes in foreclosures initiated and prosecuted by Defendants. Further, Plaintiffs allege that "thousands of Ohio homeowners have been wrongfully required to defend frivolous foreclosure actions and have incurred substantial legal fees and inflated and/or fabricated foreclosure-related fees charged by Defendants when the plaintiff lacked the standing to institute the foreclosure proceedings against them in the first instance." [Compl. ¶¶ 15–16]. In sum, Plaintiffs claim that the above-described "unfair and deceptive debt collection practices violate the FDCPA and the OCSPA and have been perpetrated on an institutionalized basis through the knowing participation and coordination of each Defendant." [Compl. ¶ 17].

*Clark v. Lender Processing Servs., Inc.*, 949 F. Supp. 2d 763, 767–69 (N.D. Ohio 2013).

The plaintiffs originally filed this lawsuit as a putative class action in Ohio state court. Their complaint asserted a claim under the Ohio Consumer Sales Practices Act (OCSPA) and other state law causes of action. The defendants removed to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The plaintiffs then amended their complaint to add a claim under the federal Fair Debt Collection Practices Act (FDCPA). After the plaintiffs voluntarily dismissed certain claims against some of the defendants, the Ryshes had claims under the FDCPA, and all of the present plaintiff-appellants had claims under the OCSPA. The district court granted the defendants' motion to dismiss these claims based on several alternative arguments. The district court first reasoned that the plaintiffs did not have standing to challenge the transfer of the mortgages to the trusts. This holding was based on the rule that a person that is not a party to an assignment may not challenge that transfer. By way of example, the final transfer involving Clark's mortgage was between JP Morgan and Bank of New York. Because Clark had no involvement in that transaction, she lacked standing to challenge it. The district court next held that Whiteman and the Ryshes' claims were impermissible collateral attacks on the state foreclosure cases, and that their claims were barred by res judicata because Whiteman and the Ryshes had already challenged Deutsche Bank's standing to foreclose in their state foreclosure cases, and doing so again in the guise of a consumer protection claim was impermissible. Next, the court concluded that the Ryshes had failed to state an FDCPA claim because Lender Processing was not a "debt collector" because its business is too far removed from the business of debt collection and because it did not make any materially misleading statements. Finally, the court reasoned that the plaintiffs' OCSPA claims failed because the OSCPA excludes transactions between "financial institutions" and their customers and because

the defendants were not "suppliers" of consumer goods because they do not offer services to consumers. The plaintiffs appeal.

First, notwithstanding plaintiffs' arguments on appeal, the district court had jurisdiction over the plaintiffs' state-law claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The plaintiffs argue that the district court only had federal-question jurisdiction over the FDCPA claims and supplemental jurisdiction over the OCSPA claims. According to the plaintiffs, the district court should have remanded the case back to state court after the district court dismissed the plaintiffs' FDCPA claim because "a federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims. . . . Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (internal quotation marks and citations omitted). But that argument fails because the district court had original jurisdiction under the Class Action Fairness Act. That act provides that "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 . . . and is a class action in which [there is minimal diversity]." 28 U.S.C. § 1332(d)(2).

The plaintiffs do not dispute that this case met the requirements of § 1332(d)(1), but rather argue that the Class Action Fairness Act could not have provided jurisdiction because the "home state" and "local controversy" exceptions found in § 1332(d)(4) apply. Those exceptions require a court to decline jurisdiction when "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed" and certain other requirements are met or when "two-thirds or more of the

members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." *Id.* § 1332(d)(4). However, the local-controversy and home-state exceptions do not deprive a court of jurisdiction. *See Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp.*, 636 F.3d 971, 973 (8th Cir. 2011); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 869–70 (9th Cir. 2013). The statute speaks only of a district court's *declining* jurisdiction if the exceptions apply. This language clearly indicates that the exceptions do not deprive the court of jurisdiction it otherwise possesses because a court could not "decline" jurisdiction that it never had in the first place. While perhaps the exceptions may have applied, the plaintiffs did not make that argument to the district court. Because the exceptions are not jurisdictional and the plaintiffs did not alert the district court of their potential applicability, this court will not consider whether they should have applied on appeal. *See Visendi*, 733 F.3d at 869–70. Because the applicability of the home-state or local-controversy did not deprive the district court of jurisdiction under the Class Action Fairness Act, it had federal jurisdiction and did not need to rely on supplemental jurisdiction to consider the plaintiffs' OCSPA claims.

The Ryshes are the only plaintiffs still parties on appeal raising FDCPA claims, and their claims are without merit. Because Deutsche Bank held the Ryshes' note, the defendants did not make materially misleading statements about the bank's right to foreclose. At bottom, the Ryshes' consumer protection claims are premised on the argument that the defendants lied and cheated to establish their bank-client's standing to foreclose. The Ryshes argue that defendants forged signatures on assignments of mortgages and lied about complying with the terms of the pooling agreements. But if Deutsche Bank had standing to foreclose in spite of those alleged misrepresentations, then the defendants' statements were not materially misleading.

To state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity. *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459–60 (6th Cir. 2013). Section 1692e forbids "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." Furthermore, this court has held that a statement must be more than just misleading—it "must be *materially* false or misleading to violate Section 1692e." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012). "The materiality standard . . . means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer." *Id.* at 326–27.

Here the statements made by the defendants were not false (much less materially misleading) because the complaint makes clear that Deutsche Bank had the right to foreclose against the Ryshes. When a homeowner has to borrow money to purchase a home, that borrower typically executes a promissory note and a mortgage. "The promissory note is a contract by which the [borrower] promises to repay the loan to the [lender]. The security instrument [or mortgage] gives that [lender] the right to foreclose on the property if the [borrower] defaults on the loan obligation." Zachary A. Kisber, *Reevaluating MERS in the Wake of the Foreclosure Crisis*, 42 Real Es. L.J. 183, 186 (2013). Under Ohio law, possession of either the note or the mortgage gives a party standing to foreclose. *CitiMortgage, Inc. v. Patterson*, 984 N.E.2d 392, 397–98 (Ohio Ct. App. 2012) (citing *Fed. Home Loan Mortg. Co. v. Schwartzwald*, 979 N.E.2d 1214, 1220 (Ohio 2012)). In other words, if Deutsche Bank owned or held the Ryshes' note or mortgage, and the Ryshes defaulted, then it was perfectly justified in filing a foreclosure suit.

Deutsche Bank appears to have been the holder of the Ryshes' note because it was endorsed in blank. "Under R.C. 1303.31(A), the 'holder' of a negotiable instrument is a

'[p]erson entitled to enforce' the instrument. A 'holder' includes a person who is in possession of an instrument payable to bearer. R.C. 1301.01(T)(1)(a). When an instrument is endorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed [made payable to a particular person]." *Deutsche Bank Nat'l Trust Co. v. Najar*, No. 98502, 2013-Ohio-1657, 2013 WL 1791372 at *6 (Ohio Ct. App. April. 25, 2013) (internal quotations marks, citations, and footnotes omitted). In other words, the person in physical possession of a note endorsed in blank may enforce it. Here there appears to be no dispute that the Ryshes' note was endorsed in blank and that Deutsche Bank had physical possession of the note at the time it initiated foreclosure proceedings. Tellingly, the allegations in the complaint focus on shenanigans that arose during the transfer of the Ryshes' mortgage, but only generally assert that the note was improperly transferred. *See, e.g.*, Compl. ¶¶ 212–16, 217–22.

On these facts, the defendant did not make materially misleading statements. In similar cases, courts in this circuit have held that an FDCPA complaint will survive a motion to dismiss "where a plaintiff alleges that the plaintiff in an underlying debt collection says that it was the owner of a debt, all the while knowing that [it] did not have the means of proving that debt." *Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp. 2d 498, 506 (N.D. Ohio 2011) (internal quotation marks omitted). Conversely, an FDCPA claim should be dismissed if the plaintiff in the underlying debt collection action could in fact prove that it owned the debt. Based on its possession of the Ryshes' note, Deutsche Bank appears to have been able to prove debt ownership.

The Ryshes could not have been misled by anything the defendants said or did in this case. In *Wallace*, this court held that an FDCPA claim could proceed when a misstatement could

mislead or confuse a consumer. 683 F.3d at 327. The plaintiff in that case alleged that a statement misrepresenting which party held her note "caused her confusion and delay in trying to contact the proper party concerning payment of her loan and resolution of her problem." *Id.* No similar allegations appear in this complaint. *Wallace* went on to explain that whether a lender has "standing to bring a foreclosure action" is not "dispositive of whether a statement was materially misleading." *Id.* at 327 n.2. But here, the Ryshes contend that defendants' statements were misleading solely because those statements implied that Deutsche Bank had standing when it did not. The complaint says:

> Defendants' communications were deceptive . . . as they misrepresented who held and/or owned plaintiffs' notes and mortgages at the time the underlying foreclosure actions were filed, thus concealing the fact that their clients lacked the legal capacity to bring the suits. Indeed, the plaintiffs in the underlying foreclosure actions (i.e., Defendants' clients) stated that they were the owners of, holders of, and/or entitled to enforce the Plaintiffs' debts, all the while knowing that they did not have the means of proving their ownership, holder status, or entitlement to enforce the debt. In fact, Defendants knowingly created and executed false and misleading assignments of the notes to their clients in furtherance of this scheme.

Compl. ¶ 270. As the *Wallace* court explained, a lender could have standing to foreclose but nevertheless make a misleading statement in the course of trying to collect a debt. But here, where the only misleading aspect of a communication or statement is that the statement implies that the lender has standing to foreclose when it did not, whether or not the lender does in fact have the right to foreclose appears to settle the matter.

For similar reasons, the plaintiffs claim under § 1692f claim fails. Section 1692f is a catchall provision that forbids a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt." Other courts have held that "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not

actionable under §§ 1692e or 1692f." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010). In other words, if a 1692f claim is premised on a false or misleading representation, the misrepresentation must be material. *See Lembach v. Bierman*, 528 F. App'x 297, 303–04 (4th Cir. 2013). As discussed above, there appears to be no dispute that Deutsche Bank was in possession of the Ryshes' note and that note was endorsed in blank, and so any misrepresentation was not material. Therefore, summary judgment was proper with respect to the Ryshes' FDCPA claims.

The plaintiffs moreover cannot bring an OCSPA claim because the defendants were not suppliers engaged in consumer transactions. The OCSPA forbids a "supplier" from committing an "unfair or deceptive act or practice in connection with a consumer transaction." O.R.C. § 1345.02. Supplier is in turn defined as "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." *Id.* § 1345.01(C). Consumer transaction "means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household." *Id.* § 1345.01(A).

In *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), the Ohio Supreme Court held that a mortgage servicer is not a supplier involved in consumer transactions under the OCSPA. The court explained that mortgage servicers do not engage in consumer transactions because they contract with financial institutions to provide those institutions services rather than to "transfer a service to the borrower." *Id.* at 1001. "[A] mortgage servicer neither sells nor gives the borrower the services it provides to the owner of the mortgage and note." *Id.* Furthermore, mortgage servicers are not suppliers because they do not

"cause a consumer transaction to happen or . . . seek to enter into a consumer transaction." *Id.* at 1003.

Although *Anderson* does not directly control this case because Lender Processing and its subsidiaries are not mortgage servicers, the reasoning in *Anderson* applies by analogy to companies like Lender Processing. When a homeowner defaults on a mortgage, a mortgage servicer or lender can hire Lender Processing to manage the foreclosure process. The *Anderson* court's opinion limited its discussion to traditional mortgage servicers (i.e., businesses that collect monthly mortgage payments on behalf of lenders), and so the opinion does not directly address companies like Lender Processing (i.e., vendors that help lenders manage the foreclosure process). But *Anderson* teaches that the plain language of the OSCPA should be taken seriously: companies not in the business of "effecting or soliciting consumer transactions" are not suppliers engaging in consumer transactions. Like a traditional mortgage servicer, Lender Processing falls into a category of businesses that do not seek to provide consumers with services. Rather, both mortgage servicers and companies like Lender Processing offer their services to lenders. As is the case when a mortgage servicer collects a monthly mortgage payment on behalf of a financial institution, Lender Processing helps initiate and manage foreclosure proceedings on behalf of a financial institution. In fact, mortgage servicers offer at least some marginal service to consumers because they collect money from those consumers on behalf of a lender. Consumers would only interact with Lender Processing because its lender-client had hired the company to help initiate and manage a foreclosure. Managing a process that ends with a consumer losing her home could scarcely be considered a "service" for the consumer.

The plaintiffs do cite pre-*Anderson* decisions that indicated that companies involved in the collection of consumer debts are suppliers. *See, e.g.*, *Celebrezze v. United Research, Inc.*,

482 N.E.2d 1260 (Ohio Ct. App. 1984). Traditional mortgage servicing, which involves the collection of monthly payments, is also a type of debt collection. Nevertheless, the debt-collection cases cited by the plaintiffs did not play a role in the *Anderson* court's reasoning, and a dissent criticized the court for failing to consider those cases. *See Anderson*, 989 N.E.2d at 1005 (O'Neill, J, dissenting). If a mortgage servicer's involvement in debt collection was not relevant in *Anderson*, there is no reason to believe that the Ohio Supreme Court would treat a company like Lender Processing any differently. This reasoning applies not just to Lender Processing, but also to its subsidiaries and the defendant law firms. In *Glazer v. Chase Home Fin. L.L.C.*, No. 99875, 2013-Ohio-5589, 2013 WL 7869273, at \*11 (Ohio Ct. App. Dec. 19, 2013), an Ohio court held that an OCSPA claim fails against a defendant law firm when that law firm acted solely as the agent of a company not involved in a consumer transaction. Because the defendants were not suppliers engaged in consumer transactions, plaintiffs' OCSPA claim fails.

We need not reach the other bases relied upon by the district court for denying relief. For the foregoing reasons, we AFFIRM the judgment of the district court.