[Cite as *Baaron, Inc. v. Davidson*, 2015-Ohio-4217.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

BAARON, INC., dba TDP
CONTRACTING

    Appellant

    v.

NORMA DAVIDSON

    Appellee

C.A. No.     13CA0050


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    11-CV-0460

DECISION AND JOURNAL ENTRY

Dated: October 13, 2015

---

HENSAL, Presiding Judge.

{¶1} Appellant, Baaron, Inc., d.b.a. TDP Contracting ("TDP"), appeals from the judgments of the Wayne County Court of Common Pleas. For the following reasons, this Court affirms in part and reverses in part.

I.

{¶2} Appellee, Norma Davidson, hired TDP to complete a remodeling project at a home she purchased in Wooster, Ohio. Mr. "T.A." Perrine ("T.A.") of TDP testified that, based on his initial meeting with Ms. Davidson at her home, he quoted her a price of $5,400 to renovate the bathroom, install new carpeting, replace the kitchen countertop, and paint the interior walls. According to T.A., he prepared a written estimate at their meeting that was signed by Ms. Davidson. He could not, however, produce a copy of the estimate at trial.

{¶3} After TDP began the work, the scope of the project expanded to include many additional items such as new kitchen cabinets and appliances. Ms. Davidson paid TDP a total of

$6,000. T.A. testified that he told Ms. Davidson the total price would exceed $10,000 but never discussed the entire cost of the project with her. Several months after completion of the work, TDP sent Ms. Davidson an invoice demonstrating that the full cost of the project was $30,080. Ms. Davidson does not dispute that TDP performed the work detailed on its invoice. Instead, she maintains that she told T.A. she could spend no more than $6,000 and that he continually reassured her that the additional items would fit in her budget. She further testified that their work was deficient and performed in an unworkmanlike manner.

{¶4} TDP sued Ms. Davidson for breach of contract and unjust enrichment claiming it was still owed $24,080 after applying Ms. Davidson's $6,000 in payments. Ms. Davidson answered and asserted counterclaims for violation of the Ohio Consumer Sales Practices Act ("CSPA"), negligence, and breach of contract. After a jury trial, TDP was awarded damages of $15,895 on its unjust enrichment claim and Ms. Davidson was awarded damages of $18,000 on her CSPA claim. The jury determined that TDP committed an unconscionable act involving "gross one-sidedness" and "susceptible or unsophisticated clientele." After a hearing, the trial court awarded Ms. Davidson treble damages in the amount of $6,315 (after offsetting the jury's awards to each party) and attorney's fees in the amount of $10,000. TDP has appealed asserting three assignments of error for this Court's review.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING TDP CONTRACTING'S MOTION FOR DIRECTED VERDICT/JNOV OR NEW TRIAL.

{¶5} In its first assignment of error, TDP argues that the trial court erred in denying both its motion for a directed verdict and motion for judgment notwithstanding the verdict or new trial because it was not a "supplier" as defined by the CSPA. The substance of TDP's

argument regarding those motions is confined to whether there was sufficient evidence to demonstrate that it was a "supplier" under the CSPA as a matter of law. Accordingly, this Court will review the trial court's decision on the motion under a de novo standard. *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, ¶ 14; *Schottenstein Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. Medina No. 10CA0138-M, 2011-Ohio-6201, ¶ 9.

{¶6} Since "[t]he CSPA is remedial in nature, having been designed to compensate for incomplete consumer remedies available at common law[,] * * * we must liberally construe the statute in favor of the consumer." (Citations omitted.) *Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St.3d 31, 2013-Ohio-1933, ¶ 9. Revised Code Section 1345.01(C) defines a "[s]upplier" as one "engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." The Ohio Supreme Court has clarified that "'suppliers' are those that cause a consumer transaction to happen or that seek to enter into a consumer transaction." *Anderson* at ¶ 30. A "[c]onsumer transaction" is defined as "a sale * * * or other transfer of an item of goods [or] a service * * * to an individual for purposes that are primarily personal, family, or household * * *." R.C. 1345.01(A). TDP does not dispute that its agreement with Ms. Davidson was a consumer transaction. It argues, however, that there was no evidence it engaged in the business of consumer transactions as it normally worked on only commercial jobs and Ms. Davidson's project was its "first (and only) consumer project."

{¶7} K. Terry Perrine ("Terry") testified that he is the president of Baaron, Inc., a company that primarily sells industrial fasteners. TDP was formed in early 2010 as a division of Baaron, Inc. to help it get through a significant decline in its fastener business. According to Terry, his son, T.A., suggested forming TDP for the purpose for refurbishing foreclosed homes.

T.A. testified that TDP started working for another construction company, Condor, on foreclosed homes located throughout Ohio. TDP eventually took over the projects from Condor. T.A. testified that TDP worked on approximately six projects before undertaking Ms. Davidson's renovations. Ms. Davidson testified that she was referred to TDP by her neighbor who had the company replace her countertops.

{¶8} TDP relies upon the case of *Renner v. Derin Acquisition Corp.*, 111 Ohio App.3d 326 (8th Dist.1996) to support its argument that engaging in a single, isolated transaction does not qualify it as a "supplier" under Revised Code Section 1345.01(C). The court in *Renner* concluded that an attorney who sent one collection demand letter on behalf of her client was not a "supplier" under the CSPA. *Renner* at 337-338.

{¶9} Contrary to TDP's representations, the evidence at trial did not establish that it worked only on commercial construction projects. There was no evidence produced at trial that its primary customers were either commercial or consumers; only that the projects involved the renovation of foreclosed homes. While one could infer from the testimony that TDP worked for banks or other companies, one could also infer that it worked for individuals who purchased the homes at a sheriff's sale and intended to make them their personal residences. In addition, Ms. Davidson's testimony concerning how she obtained TDP's contact information indicates that TDP did engage in at least one other residential project involving Ms. Davidson's neighbor.

{¶10} Upon review of the record, we conclude that, because there was evidence that TDP was a "supplier" as defined in Section 1345.01(C) of the CSPA, the trial court did not err when it denied TDP's motions for a directed verdict, judgment notwithstanding the verdict or new trial. TDP's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

THE JURY'S VERDICT IN FAVOR OF DAVIDSON ON THE CONSUMER SALES PRACTICES ACT CLAIM WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶11} TDP states in its second assignment of error that the jury's verdict and damages award on Ms. Davidson's CSPA claim was against the manifest weight of the evidence. Although characterizing its second assignment of error as a manifest weight argument, the substance of its argument is that it was entitled to judgment on Ms. Davidson's counterclaim because she "failed to present sufficient evidence to establish any unconscionable act of TDP * * *" and because "there was no evidence of any damage caused by TDP * * *." According to TDP, because Ms. Davidson "presented no evidence" that she was susceptible or unsophisticated, that the contract was grossly one-sided, or that she suffered any damages, it "was entitled to a directed verdict/judgment notwithstanding the verdict or a new trial" under Civil Rule 50(A) and 59(A)(4), (5), (6), (7), and (9). We will address its argument as to each of those rules below.

**Motion for Directed Verdict**

{¶12} TDP argues that the trial court should have granted its Civil Rule 50(A) motion for a directed verdict. We note that "[a] motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." *Jarvis v. Stone*, 9th Dist. Summit No. 23904, 2008-Ohio-3313, ¶ 7. As such, this Court will analyze TDP's argument using the sufficiency standard. *Swedlow v. Riegler*, 9th Dist. Summit No. 26710, 2013-Ohio-5562, ¶ 29.

{¶13} The Ohio Supreme Court has explained that "[t]he sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley v. Volkman*,

132 Ohio St.3d 328, 2012-Ohio-2179, at paragraph two of the syllabus. "[S]ufficiency" has been defined as

> 'a term of art meaning that legal standard which is applied to determine * * * whether the evidence is legally sufficient to support the [judgment] as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Id.* at ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When a defendant argues that the judgment in a civil case is supported by insufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of the plaintiff." *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, ¶ 8.

{¶14} "The Consumer Sales Practices Act prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Fleischer v. George*, 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, ¶ 16, quoting, *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990). "In general, the CSPA defines * * * 'unconscionable acts or practices' [as] relat[ing] to a supplier manipulating a consumer's understanding of the nature of the transaction at issue." *Id.*, quoting *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 10.

> In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration:
>
> (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;
>
> (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment;

(7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy.

R.C. 1345.03(B).

{¶15} TDP argues that there was no evidence presented from which the jury could determine either that Ms. Davidson was a "susceptible" or "unsophisticated" client. It also argues that there was no evidence that the contract was "grossly one-sided[,]" that Ms. Davidson was "swindled in some manner," that she was "confused by TDP," or that the "prices charged for the work were unfair in any manner."

{¶16} Regarding whether Ms. Davidson was a susceptible or unsophisticated client, we note that, under Section 1345.03(B)(1), "the focus is on whether the consumer lacks the physical or mental ability to protect himself or herself." *Martin v. Gen. Motors Acceptance Corp., N. Am.*, 160 Ohio App.3d 19, 2005-Ohio-1349, ¶ 21 (7th Dist.). Ms. Davidson testified that she was 78 years old and retired. She previously worked as a welder in a factory and at the Apple Creek Development Center. The jury observed her testify twice: once during TDP's case-in-chief and once during her own case-in-chief. Accordingly, it was able to "view [her] and

observe [her] demeanor, gestures and voice inflections, and use these observations" in assessing her testimony. *State v. Persinger*, 9th Dist. Lorain No. 13CA010397, 2014-Ohio-4125, ¶ 18, quoting *State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. *See also State v. Kilbarger*, 12th Dist. Fayette No. CA2013-04-013, 2014-Ohio-2341, ¶ 18 (concerning whether the victim's ability to consent to sexual conduct was substantially impaired because of a mental condition, the court noted that "the jury was able to observe the victim testify on the witness stand and thus, was able to assess the victim's mental condition * * *."). The record reflects that the attorneys and the trial court often had to refocus Ms. Davidson or rephrase questions. We, therefore, cannot say that there was insufficient evidence from which the jury could find that Ms. Davidson was a "susceptible" or "unsophisticated" client.

{¶17} Regarding TDP's other conscionability arguments, we note that Ms. Davidson testified that she was surprised and "flabbergasted" at many of the renovations as she had never authorized them. She maintained that T.A. repeatedly told her that the additional renovations would look nice and fit her budget. Ms. Davidson testified that the kitchen appliances were included in the initial quote from TDP and that she never went to Lowes to pick out appliances. She disputes T.A.'s testimony that he gave her a written estimate at their initial meeting. According to Ms. Davidson, she initially told T.A. she could not exceed $6,000 for the entire project. She further testified that much of the work was substandard. Ms. Davidson described one particular incident wherein a kitchen cabinet fell off of the wall when she shut the cabinet door after removing a glass. She identified numerous photographs depicting what she believed was shoddy work. Ms. Davidson's expert, Christopher Leach, also testified at trial. In his opinion, the overall quality of the workmanship was "very poor."

**{¶18}** After reviewing the evidence, this Court cannot conclude that Ms. Davidson presented insufficient evidence that her agreement with TDP was unconscionable. By TDP's own admission, it did not discuss a total cost of the project with Ms. Davidson and could not produce a copy of the initial estimate T.A. testified that Ms. Davidson signed. A reasonable jury could find that, in light of Ms. Davidson's susceptibility, the evidence suggesting the work was deficient, the fact that TDP did not discuss specific costs with Ms. Davidson, the fact that TDP continually initiated additional renovations that Ms. Davidson did not authorize, and TDP's false reassurances that the work would fit in her budget, the agreement was unconscionable under Section 1345.03.

**Motion for a New Trial**

**{¶19}** TDP argues that the jury's damage award was "excessive" under Civil Rule 59(A)(4) because there was no evidence that it caused any damages. Similarly, it argues that, because there was no evidence of damages, the amount of the damage award was "too large" under Rule 59(A)(5).

**{¶20}** Ms. Davidson testified to several pictures that depicted what she believed was substandard work performed by TDP. She admitted that she never informed TDP of the subsequent problems with its work, because she was satisfied with the job for the total of $6,000 that she paid. It was not until TDP attempted to collect the balance due of $24,080 and sued her that she thought to bring her claims.

**{¶21}** Mr. Leach testified that he visited Ms. Davidson's home on two occasions for a total of four hours. The first visit was more than one year after TDP last performed any work at the home. He detailed numerous problems with TDP's work that would require either repair or replacement. Mr. Leach opined that the work was not completed in a workmanlike manner and

that the materials used were of a poor quality. He provided an itemized estimate that totaled $28,690.71 to repair or replace TDP's deficient work. Mr. Leach admitted that several of the items were upgrades from what Ms. Davidson currently had in her home. He further acknowledged that Ms. Davidson never requested that he provide a specific itemization of the actual damage caused by TDP.

**{¶22}** After reviewing the evidence, this Court does not agree with TDP that Ms. Davidson presented no evidence of damages or that the jury's award in the amount of $18,000 was not supported by the evidence. Ms. Davidson presented evidence in support of her claim that she paid $6,000 for work that both she and Mr. Leach characterized as substandard. Mr. Leach testified to specific items that required replacement and submitted his itemized invoice detailing the cost of those items. While it is true that Mr. Leach did not itemize the damage caused by TDP, the jury was able to glean the information from both his testimony and invoice.

**{¶23}** We also do not agree that the jury's damage award was excessive, or resulted from passion or prejudice for Ms. Davidson. *See* Civ.R. 59(A)(4). Although Ms. Davidson presented evidence that it would cost $28,690.71 to repair or replace TDP's deficient work, the jury only awarded her $18,000 on her CSPA claim.

**{¶24}** Regarding TDP's argument that it was entitled to a new trial under Civil Rule 59(A)(5) as the damage award was too large due to the lack of evidence, this Court notes that "[a] plaintiff who alleges * * * damages to real property may recover '(1) reasonable restoration costs * * *.'" *Lubanovich*, 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, at ¶13, quoting *Horrisberger v. Mohlmaster*, 102 Ohio App.3d 494, 499 (9th Dist.1995). According to Mr. Leach, the items that needed replacing included doors, baseboard, cabinets, and countertops, a shower and tile, baseboard heaters, and ceiling registers. All of those items could reasonably be

considered "fixtures" and, thus, part of Ms. Davidson's real property. *See Masheter v. Boehm*, 37 Ohio St.2d 68, 72-74 (1974). The evidence Ms. Davidson presented demonstrated the cost of replacing the deficient work. Further, TDP's argument that Ms. Davidson thought their work was adequate until she received the final bill belies her testimony. She clarified at trial that she "brought [the construction problems] out" after she received the final bill, but that she was willing to "live with the work" for $6,000. Finally, TDP argues that there was no evidence that the property was not in the condition contemplated by the parties because two years passed between when TDP was last at Ms. Davidson's home and when Mr. Leach inspected it. Mr. Leach testified, however, about each of Ms. Davidson's complaints. He opined that both the installation and the quality of the construction were performed in an unworkmanlike manner. TDP neither denied that they performed the work that Mr. Leach testified to nor presented testimony regarding the status of the quality of that work in direct contravention of Mr. Leach's testimony.

{¶25} TDP next relies on its arguments set forth under Civil Rule 59(4) and (5) to justify a new trial under Rule 59(A)(6). Because this Court has already rejected its arguments concerning the damage award, we find no merit to his arguments that the verdict was against the manifest weight of the evidence so as to justify a new trial under Rule 59(A)(6).

{¶26} TDP's argument under Civil Rule 59(A)(7) repeats its assertion that it is not a "supplier" under the CSPA. As this Court explained earlier, however, there was evidence from which the trial court could conclude that TDP was a supplier as defined by the CSPA. TDP also argues that, even if it was a supplier, the judgment was "contrary to law" because the "damages awarded on the counterclaim were not supported by the evidence." We reject TDP's argument because, as previously stated, there was evidence in the record that Ms. Davidson was damaged.

**{¶27}** Finally, TDP argues that it is entitled to a new trial under Rule 59(A)(9) because the court erred as a matter of law by denying its motion for a directed verdict on the issue of whether it was a supplier under the CSPA. This Court rejected this same argument in resolving TDP's first assignment of error.

**{¶28}** Upon review of the record, we conclude that TDP has failed to establish that the jury's verdict and damages award were not supported by sufficient evidence, entitling it to relief under Civil Rules 50 or 59. Accordingly, TDP's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN AWARDING ATTORNEY'S FEES AND TREBLE DAMAGES IN FAVOR OF DAVIDSON.

**{¶29}** In its third assignment of error, TDP argues that the trial court erred in awarding Ms. Davidson treble damages and attorney's fees. We agree in part.

**{¶30}** Revised Code Section 1345.09(A) allows a consumer to seek actual economic damages as a remedy for violations of the CSPA. The damage award may be trebled if "(1) the Attorney General has promulgated a regulation that declares the specific act or practice to be * * * unconscionable, or (2) an Ohio court has issued a decision, made available for public inspection that determines that the specific act or practice violated R.C. 1345.02 or 1345.03." *Fleischer v. George*, 9th Dist. Medina No 09CA0057-M, 2010-Ohio-3941, at ¶ 17. "Whether treble damages are appropriate is a question of law. Questions of law are reviewed de novo, with no deference to the trial court's determination." (Citations omitted.) *Id*. at ¶ 18.

**{¶31}** TDP argues that the trial court erred in awarding treble damages as there was no evidence it committed an unconscionable act. It contends that the jury's finding that Ms. Davidson was a "susceptible or unsophisticated" consumer does not equate to the standard set forth in Revised Code Section 1345.03(B)(1). We addressed this same argument in TDP's

second assignment of error and determined that Ms. Davidson presented sufficient evidence to support the jury's conclusion. TDP does not argue either that the Attorney General has not promulgated a regulation that declared the specific act unconscionable or that an Ohio Court has not issued a decision that concludes that the specific act violated Section 1345.03. R.C. 1345.09(B); *Fleischer* at ¶ 17. We note that, in support of her motion for treble damages, Ms. Davidson cited to several cases, which she represented were available for public inspection, determining that the specific unconscionable act violated the CSPA. Because TDP does not challenge the trial court's finding on either of the prerequisites necessary to justify treble damages found in Section 1345.09(B), and instead reiterates its argument that there was insufficient evidence to support the jury's award, this Court concludes that the trial court did not err in awarding Ms. Davidson treble damages.

{¶32} Next, TDP argues that the trial court erred in awarding Ms. Davidson $10,000 in attorney's fees. Section 1345.09(F) permits a trial court to award the prevailing party her "reasonable attorney's fee limited to the work reasonably performed * * *." A trial court's determination on an award of attorney's fees should not be reversed unless it abused its discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). An appellate court may not substitute its judgment for that of the trial court when applying the abuse-of-discretion standard. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶33} The Ohio Supreme Court held in *Bittner* that

When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the

factors listed in DR-106(B).[1]  These factors are:  the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent.  All factors may not be applicable in all cases and the trial court has the discretion to determine which factors apply, and in what manner that application will affect the initial calculation.

*Bittner* at 145-146.  "When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination.  Absent such a statement, it is not possible for an appellate court to conduct a meaningful review."  *Id*. at 146.

{¶34}  At the hearing on her motion for attorney's fees, Ms. Davidson was the sole witness.  She submitted an invoice from her prior counsel indicating that the total amount of attorney's fees billed to her were $3,049.04.  The invoice did not itemize the fees.  Ms. Davidson also submitted an itemized list of services her current attorney performed in the case which totaled $9,662.50.  In its judgment entry, the trial court found that "[Ms. Davidson] shall also recover attorney['s] fees pursuant to R.C. 1345.09(F) of $10,000.00."  The trial court did not state its basis for awarding the fees, which differed from the amount requested by Ms. Davidson.  Accordingly, we reverse the judgment of the trial court and remand the cause for it to set forth its basis for the fee determination.  *Bittner*, 58 Ohio St.3d at 146.  The remaining arguments set forth by TDP concerning the attorney's fee award are not ripe for review at this time in light of our remand.

{¶35}  We sustain TDP's assignment of error as it pertains to the award of attorney's fees.  Its argument concerning the award of treble damages is overruled.

---

[1] DR 2-106 was superseded by Rule 1.5 of the Rules of Professional Conduct.  The factors listed in DR 2-106 are virtually the same as the factors listed in Rule 1.5.

III.

**{¶36}** TDP's first and second assignments of error are overruled. Its third assignment of error is sustained in part and overruled in part. The judgment of the Wayne County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

_____
JENNIFER HENSAL
FOR THE COURT

CARR, J.
MOORE, J.
CONCUR.


APPEARANCES:

TIMOTHY B. PETTORINI, Attorney at Law, for Appellant.

MATTHEW J. MALONE, Attorney at Law, for Appellee.