[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dillon v. Farmers Ins. Of Columbus, Inc.,* Slip Opinion No. 2015-Ohio-5407.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-5407

DILLON, ET AL., APPELLEES, *v.* FARMERS INSURANCE OF COLUMBUS, INC., APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dillon v. Farmers Ins. of Columbus, Inc.,* Slip Opinion No. 2015-Ohio-5407.]

*Consumer Sales Practices Act—Application to insurance companies—R.C. 1345.01(A) and 1345.81(E) are not irreconcilable—Insurer's provision of an automobile-repair estimate to its customer is not a consumer transaction and does not occur in connection with a consumer transaction.*

(No. 2014-0451—Submitted February 24, 2015—Decided December 29, 2015.)

APPEAL from the Court of Appeals for Coshocton County,

No. 2013CA0014, 2014-Ohio-431.

_____

**O'CONNOR, C.J.**

{¶ 1} In this appeal, we address whether an insurer engages in a "consumer transaction" as defined in the Ohio Consumer Sales Practices Act, R.C. Chapter

1345 ("CSPA"), when it issues a repair estimate in relation to its policy holder's claim for motor-vehicle damage. We hold that the insurer does not become a party to a consumer transaction in this circumstance. Thus, we vacate the court of appeals' judgment modifying and affirming the trial court's award of damages under the CSPA, and we dismiss the cause.

## RELEVANT BACKGROUND

{¶ 2} Appellees, Jerry Dillon ("Dillon") and Nancy Dillon, damaged their vehicle when they collided with a deer in the roadway. Appellant, Farmers Insurance of Columbus, Inc. ("Farmers"), insured the Dillons' automobile.

{¶ 3} Following the accident, Dillon chose Mission Auto Connection, Inc., ("Mission Auto") to repair the vehicle and contacted his Farmers agent concerning coverage for the repairs. A Farmers claim representative inspected the damaged vehicle and prepared a written estimate for repairs, which included the use of aftermarket replacement parts that were not produced by the original equipment manufacturer ("OEM").

{¶ 4} The claim representative initially provided the written estimate to Mission Auto. A representative of Mission Auto telephoned Dillon and explained that Farmers' estimate called for the use of non-OEM parts. After his conversation with the Mission Auto representative, Dillon called the claim representative. Dillon told Farmers that he wanted only OEM parts used in the repair of his vehicle. Dillon understood the difference between OEM and non-OEM parts and wanted OEM parts because he believed that they would better maintain the value of his vehicle. The claim representative replied that the Dillons' insurance policy permitted the use of non-OEM parts.[1]

---

[1] The contract between Farmers and Dillon included the following language:

> Our limits of liability for **loss** shall not exceed the lowest of * * * [t]he amount necessary to repair or replace the property or parts with others of like kind and quality; or with new property less an adjustment for physical deterioration and/or

2

**{¶ 5}** The claim representative mailed a copy of the paper estimate to Dillon; it arrived about a week after their phone conversation. By that time, Dillon had already instructed Mission Auto to move forward with repairing the vehicle using OEM parts, which Dillon understood would cost approximately $1,500 more than Farmers' estimate.

**{¶ 6}** During the repair process, Mission Auto called Dillon into its shop on four occasions to endorse checks that Farmers had sent directly to Mission Auto to pay for repair costs. Dillon endorsed the checks and entered into an oral agreement with Mission Auto that he would be responsible for the additional cost resulting from the use of OEM parts, unless it could be recovered through the instant litigation.

### The Lawsuit, the Trial Court Decision, and the Appeal to the Court of Appeals

**{¶ 7}** The Dillons filed a complaint against Farmers containing eight causes of action related to Farmers' estimate and its refusal to pay for OEM parts. Farmers moved for judgment on the pleadings and for summary judgment, both of which were denied. The Dillons moved for summary judgment on one of their claims, asking the trial court to find that Farmers violated the CSPA by failing to obtain one of the Dillons' signatures on the bottom of the estimate that was based on the use of non-OEM parts, in violation of R.C. 1345.81(B)(1). The trial court granted summary judgment to the Dillons on that claim, and the Dillons voluntarily dismissed the remainder of their claims.[2] Following a damages hearing and a nunc

---

depreciation. Property of like kind and quality includes, but is not limited to, parts made for or by the vehicle manufacturer. It also includes parts from other sources such as rebuilt parts, quality recycled (used) parts and parts supplied by non-original equipment manufacturers.

[2] After the trial court ruled in favor of the Dillons, the Dillons dismissed their remaining claims without prejudice. Farmers appealed, but the Fifth District Court of Appeals dismissed the case for lack of jurisdiction, finding that there was not a final, appealable order. The Dillons then dismissed the remaining claims with prejudice, and Farmers again appealed. The Fifth District accepted jurisdiction and issued a judgment on merits. This appeal arises from that judgment.

pro tunc judgment entry to correct a miscalculation, the trial court awarded the Dillons $30,613.66 in actual damages, statutory treble damages, attorney fees, and expenses.

{¶ 8} Farmers appealed, asserting three assignments of error. Farmers argued that the trial court erred in (1) denying its dispositive motions and granting the Dillons' motion for summary judgment, (2) awarding attorney fees and determining the amount of the fees, and (3) awarding treble damages and calculating the amount of the damages. The Fifth Appellate District rejected the first two assignments of error but partially sustained the third, reducing the damages award to $29,092.59.

{¶ 9} In affirming the trial court's judgment, the appellate court focused on R.C. 1345.02, which provides that an unfair or deceptive act or practice in connection with a consumer transaction violates the CSPA; on R.C. 1345.01, which excludes transactions between insurers and their customers from the definition of a consumer transaction; and on R.C. 1345.81, which imposes requirements on insurers issuing motor-vehicle-repair estimates based on the use of non-OEM parts and provides that "[a]ny violation of this section in connection with a consumer transaction as defined in section 1345.01 of the Revised Code is an unfair and deceptive act or practice as defined by section 1345.02 of the Revised Code." The

---

We recognized in *Pattison v. W.W. Grainger, Inc.* that Civ.R. 41(A) "does not allow for the dismissal of a *portion* of the claims against a certain defendant." (Emphasis sic.) 120 Ohio St.3d 142, 2008-Ohio-5276, 897 N.E.2d 126, ¶ 18. However, given that the Dillons repeatedly attempted to dismiss their claims, neither the appellate court nor Farmers questioned the effectiveness of the dismissal with prejudice, and neither party raised a claim about the propriety of the second dismissal to either the Fifth District or this court, we do not pass judgment on whether either dismissal was effective because the Dillons have waived any arguments concerning the effectiveness of the dismissal with prejudice. *See Toledo v. Reasonover*, 5 Ohio St.2d 22, 34 O.O.2d 13, 213, N.E.2d 179 (1965), paragraph two of the syllabus (finding argument not raised in the appellate court is waived).

court found that "R.C. 1345.01 and R.C. 1345.02 conflict with R.C. 1345.81 with respect to their application to insurers and cannot be applied so as to give effect to all of the provisions." 5th Dist. Coshocton No. 2013CA0014, 2014-Ohio-431, at ¶ 6. To resolve the conflict, the appellate court relied on R.C. 1.51, which instructs:

> If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

R.C. 1.51. R.C. 1.52(A) further instructs: "If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." Finding that the legislature passed R.C. 1345.81 after R.C. 1345.01 and that R.C. 1345.81 is the more specific statute, the appellate court gave full effect to R.C. 1345.81.

***The Discretionary Appeal***

{¶ 10} We accepted review of Farmers' discretionary appeal on the following propositions of law:

> 1. An insurer does not engage in a "consumer transaction" for the purposes of any provision of the Ohio Consumer Sales Practices Act (R.C. 1345.01 et seq.), when it adjusts an insured's claim for motor vehicle damage, and issues a repair estimate.
>
> 2. An insurer's issuance of a repair estimate for the use of OEM and non-OEM parts is not an "unfair or deceptive act or practice" pursuant to any provision of the Ohio Consumer Sales Practices Act

(R.C. 1345.01 et seq.), where the estimate complies with the express terms of the applicable insurance policy; the insurer orally notifies the insured of the content of the estimate; and the insured chooses the repair facility.

**{¶ 11}** Because we resolve the appeal based on the CSPA's definition of consumer transaction, we do not reach the second issue, whether an insurer's issuance of a repair estimate could constitute an unfair or deceptive act or practice.

## ANALYSIS

**{¶ 12}** The CSPA prohibits suppliers from committing "an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02. The act sets out statutory remedies for violations of this section, including damages and attorney fees. R.C. 1345.09(B), (F)(2). However, not all transactions in which consumers purchase goods or services are consumer transactions for purposes of the CSPA. The act specifically exempts transactions between insurers and their customers from its definition of consumer transaction. R.C. 1345.01(A). Another section of the CSPA imposes obligations on insurers who provide their customers with automobile-repair estimates that are based on the use of non-OEM parts. R.C. 1345.81. Specifically, R.C. 1345.81 governs the use of non-OEM aftermarket crash parts and sets forth the procedure for insurers to follow when providing a policy holder with an automobile-repair estimate that is based on the use of non-OEM parts. That procedure includes notifying the policy holder that non-OEM parts are used in the estimate and if the estimate is written, obtaining the customer's signature acknowledging receipt and approval of the estimate.[3] R.C. 1345.81(B).

---

[3] R.C. 1345.81 sets forth requirements concerning the preparation and delivery of estimates based on the use of non-OEM replacement parts:

> (B) Any insurer who provides an estimate for the repair of a motor vehicle based in whole or in part upon the use of any non-OEM aftermarket crash

The court of appeals found that Farmers violated R.C. 1345.81(B)(1) by failing to obtain a signature from one of the Dillons on the estimate that included the use of non-OEM parts. We do not need to decide if Farmers violated R.C. 1345.81(B)(1), because this appeal centers on a different issue: whether the statute's remedial provision, R.C. 1345.81(E), applies to insurers.

{¶ 13} R.C. 1345.81(E) provides, "Any violation of this section in connection with a consumer transaction as defined in section 1345.01 of the Revised Code is an unfair and deceptive act or practice as defined by section 1345.02 of the Revised Code." R.C. 1345.02 provides, "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." The remedies available for an unfair and deceptive act or practice under R.C. 1345.02 include damages and attorney fees. R.C. 1345.09(B), (F)(2).

---

part in the repair of the motor vehicle and any repair facility or installer who intends to use a non-OEM aftermarket crash part in the repair of a motor vehicle shall comply with the following provisions, as applicable:

(1) If the person requesting the repair chooses to receive a written estimate, the insurer, repair facility, or installer providing the estimate shall identify, clearly in the written estimate, each non-OEM aftermarket crash part and shall contain a written notice with the following language in ten-point or larger type: "This estimate has been prepared based upon the use of one or more aftermarket crash parts supplied by a source other than the manufacturer of your motor vehicle. Warranties applicable to these aftermarket crash parts are provided by the parts manufacturer or distributor rather than by your own motor vehicle manufacturer." Receipt and approval of the written estimate shall be acknowledged by the signature of the person requesting the repair at the bottom of the written estimate.

(2) If the person requesting the repair chooses to receive an oral estimate or no estimate at all, the insurer, repair facility, or installer providing the estimate or seeking the person's approval for repair work to commence shall furnish or read to the person a written notice as described in division (B)(1) of this section at the time that the oral estimate is given or when the person requesting the repair gives his approval for the repair work to commence. If the person has chosen to receive an oral estimate or no estimate, the written notice described in division (B)(1) of this section shall be provided with the final invoice for the repair.

{¶ 14} A "consumer transaction" is defined in R.C. 1345.01(A) as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). The statute further states that a " 'consumer transaction' does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers." An insurance company is a person defined in R.C. 5725.01(C).

{¶ 15} Farmers contends that because transactions between insurers and their customers are explicitly exempt from the definition of consumer transaction set forth in R.C. 1345.01, insurers cannot be liable for damages under the CSPA, R.C. 1345.81(E) notwithstanding. While the Fifth District Court of Appeals agreed that transactions between insurers and their customers are exempt from R.C. 1345.01's definition of consumer transaction, it concluded that R.C. 1345.01 and R.C. 1345.81 are irreconcilable and thus require the court to consider the nature and age of the statutes in order to deduce the General Assembly's intent. The appellate court found that the legislature intended R.C. 1345.81(E) to apply to insurers because it is the more specific statute and because the legislature enacted R.C. 1345.81 after it enacted R.C. 1345.01.

{¶ 16} We find that no such statutory construction is necessary because the laws are not irreconcilable. We reject the Fifth District Court of Appeals' interpretation of R.C. 1345.81(E) and hold that an insurer does not engage in a consumer transaction when it furnishes to an insured a written estimate that is based on the use of non-OEM parts.

*Consumer Transaction*

{¶ 17} Reconciling R.C. 1345.01 and 1345.81 does not require the statutory interpretation undertaken by the court of appeals. Indeed, " '[a] guiding principle of statutory interpretation is that the statute must be construed as a whole and each

of its parts must be given effect so that they are compatible with each other and related enactments.' " *State v. Everette*, 129 Ohio St.3d 317, 2011-Ohio-2856, 951 N.E.2d 1018, ¶ 25, quoting *Brookwood Presbyterian Church v. Ohio Dept. of Edn.*, 127 Ohio St.3d 469, 2010-Ohio-5710, 940 N.E.2d 1256, ¶ 26 (Brown, C.J., dissenting). Further, "we may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly's wording." *State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 967 N.E.2d 193, 2012-Ohio-1484, ¶ 18. The plain meanings of R.C. 1345.01 and 1345.81 are not irreconcilable and thus the Fifth District's reinterpretation of R.C. 1345.01 is unnecessary.

{¶ 18} R.C. 1345.81(A) defines an insurer as "any individual serving as an agent or authorized representative of an insurance company, involved with the coverage for repair of the motor vehicle in question." R.C. 1345.81(B) and (D) expressly require insurers to comply with their requirements for providing estimates that incorporate non-OEM parts and for using salvage motor-vehicle parts. But R.C. 1345.81(E), the statute's remedial section, does not state that a violation of R.C. 1345.81 by an insurer constitutes an unfair and deceptive act or practice. Instead, R.C. 1345.81(E) expressly limits unfair and deceptive acts or practices to violations "of this section *in connection with a consumer transaction as defined in section 1345.01 of the Revised Code*." (Emphasis added). As noted above, consumer transactions as defined in R.C. 1345.01 do not include transactions between insurance companies and their customers. Thus, because an insurer cannot be a party to a consumer transaction, an insurer cannot commit an unfair or deceptive act or practice under R.C. 1345.81(E).

{¶ 19} Our reading does not render R.C. 1345.81(E) meaningless, nor R.C. 1345.81 ineffective, and therefore is consistent with the rules of statutory construction. A cause of action remains under R.C. 1345.81(E) for damages against repair facilities and installers, both of whom can be involved in consumer

transactions as defined in R.C. 1345.01(A), and both of whom are also governed by R.C. 1345.81.

{¶ 20} And a policy holder is not without remedy against an insurer who violates R.C. 1345.81 simply because no remedy is provided by R.C. 1345.81(E). A "consumer may seek a declaratory judgment, an injunction, or other appropriate relief against an act or practice that violates" R.C. Chapter 1345. R.C. 1345.09(D). The CSPA also permits consumers to bring a cause of action "under any other theory of law" that would be applicable to the transaction. R.C. 1345.09(H).

{¶ 21} This court "must presume that the General Assembly is aware of previously enacted legislation." *State v. Conyers*, 87 Ohio St.3d 246, 250-251, 719 N.E.2d 535 (1999). We therefore presume that when the General Assembly enacted R.C. 1345.81(E)'s provision of remedies for "[a]ny violation of this section in connection with a consumer transaction as defined in section 1345.01 of the Revised Code," it was aware that R.C. 1345.01's definition of consumer transaction excluded transactions between insurers and their customers. The General Assembly could have, as it has in at least four other CSPA provisions enacted both before and after R.C. 1345.81, provided that a violation constitutes an unfair or deceptive act or practice without referencing R.C. 1345.01. In R.C. 1345.31 and 1345.94, both enacted in 1996, the legislature categorized the prohibited activity as an "unfair or deceptive act or practice in violation of section 1345.02" without any reference to a consumer transaction. In R.C. 1345.28 and 1345.48, enacted in 1974 and 1976 respectively, the legislature stated that failure to comply with the sections simply "*constitutes* a deceptive act or practice in connection with a consumer transaction." (Emphasis added.) Yet when it enacted R.C. 1345.81, the General Assembly expressly incorporated R.C. 1345.01's limiting language into the statute's remedy provision. Our decision in this case simply gives effect to the statute as written.

*In Connection with a Consumer Transaction*

{¶ 22} While R.C. 1345.01 establishes that transactions between insurance companies and their customers are not consumer transactions, our prior precedent establishes that an insurer's provision of a repair estimate does not render the insurer a party to the transaction between the consumer and the repair facility or installer that will be fixing the vehicle and does not occur "in connection with" that transaction.

{¶ 23} In *Anderson v. Barclay's Capital Real Estate*, we found that the scope of R.C. 1345.01(A)'s "consumer transaction" definition is limited to the parties to the transaction, not those who provide services closely related to the transaction, despite the statute's "in connection with a consumer transaction" language. 136 Ohio St.3d 31, 2013-Ohio-1933, 989 N.E.2d 997, ¶ 17 ("A mortgage servicer provides a service to a financial institution, but providing such a service to a financial institution is neither analogous to transferring a service to a borrower nor sufficient to impose liability under the CSPA"). *Anderson* involved a mortgage servicer that dealt directly with consumers on matters including loss mitigation and loan modification, consumer disputes concerning the mortgage, and purchasing insurance if it believed that the consumer had not purchased coverage that was adequate under the terms of the note and mortgage. *Id.* at ¶ 5. The plaintiff alleged that the mortgage servicer committed "an unconscionable act or practice in connection with a consumer transaction," *see* R.C. 1345.03, and "an unconscionable act or practice concerning a consumer transaction in connection with a residential mortgage," *see* R.C. 1345.031. In that case, we concluded that the relevant transaction was between the mortgage provider and the homeowner. Accordingly, we found that because "there is no sale, lease, assignment, award by chance, or other transfer of a service to a consumer" by the mortgage servicer, there can be no consumer transaction under R.C. 1345.01(A). *Id*. at ¶ 12. We also found that the definition of "consumer transaction" was insufficient to cover services that

were closely related to the transaction, but were provided by an entity that was not a party to the transaction. *Id.* at ¶ 17. A similar logic applies in this case, but Farmers had even fewer interactions with the Dillons related to the repair than Barclay's had with Anderson related to the mortgage, so we see no reason to reach a different outcome here.

{¶ 24} The relevant transaction in this case is the automobile repair. Farmers' only role in the actual repair of the vehicle was writing checks to the Dillons. The estimate was merely a means of determining—and informing the Dillons and the repair shop of—what costs the insurance company would pay under the insurance contract. Nothing in the record before us suggests that Farmers had any other role in the transaction—Farmers did not sell the repair parts or require them to be purchased from a given supplier, did not ask for any explanation of how the repairs were conducted, and did not ask for confirmation that the repairs had been completed.

{¶ 25} The service provided by Farmers was the insurance coverage, and the sale of that service happened well before the accident or subsequent repair and was explicitly exempt from the application of the CSPA by R.C. 1345.01(A). Provision of the estimate is analogous to the "collateral service" of mortgage servicing that we described in *Anderson* and is not part of the consumer transaction between the policy holder and the repair shop. Therefore, the insurer's provision of a repair estimate is not sufficiently connected with a consumer transaction to constitute a violation under R.C. 1345.81(E).

## CONCLUSION

{¶ 26} R.C. 1345.01 and 1345.81 are not irreconcilable. R.C. 1345.81(E) incorporates R.C. 1345.01's exclusion of transactions between insurers and their customers from the definition of a consumer transaction. Farmers' provision of a repair estimate to the Dillons was not in connection with a consumer transaction and therefore was not an "unfair or deceptive act or practice" pursuant to R.C.

1345.02. We therefore vacate the judgment of the Fifth District Court of Appeals and dismiss the cause.

Judgment vacated,

and cause dismissed.

O'DONNELL, LANZINGER, KENNEDY, and FRENCH, JJ., concur.

PFEIFER and O'NEILL, JJ., dissent.

_____

**O'NEILL, J., dissenting.**

**{¶ 27}** While I agree with almost everything said in the majority opinion, I simply cannot agree that the Supreme Court of Ohio is in the business of encouraging insurance companies to intentionally disregard the Consumer Sales Practices Act to the detriment of their customers. Therefore, I respectfully dissent.

**{¶ 28}** I agree with the majority that R.C. 1345.01 and 1345.81 are not irreconcilable. I agree that the plain language of R.C. 1345.01 exempts transactions between insurers and their insureds from that section's definition of a consumer transaction. Finally, and most importantly, I agree with the majority that the relevant consumer transaction in this case is the automobile repair.

**{¶ 29}** I do not take issue with the insurance-policy agreement between appellees, Jerry and Nancy Dillon, and appellant, Farmers Insurance of Columbus, Inc. And I agree that insurance-policy agreements are not consumer transactions for purposes of the CSPA. Rather, this case is about a consumer's ability to enforce a clear and unambiguous provision of the CSPA. It is beyond dispute that R.C. 1345.81 requires an insurer, repair facility, or installer to obtain an acknowledgment from a consumer that non-OEM parts are being used in an estimate.

**{¶ 30}** Farmers took it upon itself to prepare an estimate for the repair of the Dillons' car, and in so doing, Farmers subjected itself to the statutory duty under R.C. 1345.81 to disclose the use of non-OEM parts and to get the Dillons'

acknowledgment of that disclosure. Any other reading of the statute completely fails to give effect to the intent of the legislature. This is the same statutory duty that is imposed on all repair facilities and installers that provide estimates that include the use of non-OEM parts. R.C. 1345.81(B)(1). The plain language of R.C. 1345.81(E) provides that failure to obtain the required acknowledgment in connection with a consumer transaction—in this case, the automobile repair—is an unfair and deceptive act or practice.

{¶ 31} I agree with the majority that the consumer transaction in this case is not the insurance-policy agreement between Farmers and Dillon. However, once an insurance company undertakes the role of adjuster in a collision repair, there is no justification to shield it from liability under the CSPA for its actions in connection with that consumer transaction merely because it is an insurer. Doing so is unfair to consumers and to the repair facilities and installers that follow the law, and it ignores the intent of the Ohio General Assembly when it enacted the CSPA.

{¶ 32} I maintain my disagreement with this court's holding in *Anderson v. Barclay's Capital Real Estate, Inc.* that "consumer transaction" as defined in R.C. 1345.01 is limited to the parties to the transaction and does not include those who provide services closely related to the transaction. *See* 136 Ohio St.3d 31, 2013-Ohio-1933, 989 N.E.2d 997, ¶ 17. The rule in *Barclay's* is not relevant in this case, however.

{¶ 33} The relevant rule in this case is a statute. R.C. 1345.81 is part of the Consumer Sales Practices Act, and the plain language of the statute requires the insurer (or repair facility or installer) to get an acknowledgement that the consumer knows which parts are non-OEM aftermarket crash parts. In this case, Farmers failed to obtain this acknowledgment and in doing so violated R.C. 1345.81.

{¶ 34} When any provider in Ohio provides an estimate for repairs that includes non-OEM parts, it falls under the same statutory standard. This is true

14

irrespective of the fact that the provider of the estimate is also the provider of the insurance policy. The General Assembly has done the work for us in this case. By enacting R.C. 1345.81, it decided that the surreptitious installation of non-OEM parts in the repair process is a prohibited act in Ohio. The General Assembly did not say that it was alright for insurance companies and their agents to engage in prohibited acts. This court's role is to interpret the law. I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Smith, Rolfes & Skavdahl Co., L.P.A., Thomas F. Glassman, Mathew J. Smith, and Andrew L. Smith, for appellants.

Pomerene, Burns & Skelton, James M. Skelton, Robert A. Skelton, and Joseph R. Skelton, for appellees.

Dinkler Pregon, L.L.C., Jamey T. Pregon, and Lynnete Dinkler, urging reversal for amicus curiae Ohio Association of Civil Trial Attorneys.

Thompson Hine, L.L.P., Stephanie M. Chmiel, and Elizabeth B. Wright; and Kilpatrick, Townsend & Stockton, L.L.P., Adam H. Charnes, and Chris W. Haaf, for amicus curiae Alliance of Automobile Manufacturers.

Traska Kimbrell, Ltd., and Peter D. Traska, for amici curiae Automotive Education Policy Institute and Choice Auto Body Repair Association.

Willis & Willis Co., L.P.A., and Todd L. Willis, for amicus curiae Ohio Association for Justice.

_____