Kennedy, J.,
dissenting.
{¶ 30} “Decisions are the hardest moves to make, especially when it’s a choice between what you want and what is right.” Unknown.
{¶ 31} This court must respect the fact that the constitutional authority to legislate was conferred solely on the General Assembly, Article II, Section 1, Ohio Constitution, and that it is the province of the General Assembly to make policy decisions, Groch v. Gen. Motors Corp., 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. It is undisputed that “[jludicial policy preferences may not be used to override valid legislative enactments.” State v. Smorgala, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990).
{¶ 32} The legislature “is vested with the power to define, classify, and prescribe punishment for offenses committed in Ohio.” State v. Taylor, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 12. Accordingly, “[jjudges have no inherent power to create sentences,” id,., and instead “are duty-bound to apply sentencing laws as they are written,” State v. Fischer, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22, citing Griffin & Katz, Ohio Felony Sentencing Law, Section 1:3, at 4, fn. 1 (2008).
{¶ 33} Because I must adhere to these time-honored principles that define this court’s role in our tripartite system of government, I cannot interpret the statutory scheme at issue to conform to my view of what Ohio’s public policy should be. Instead, I must interpret the words that the General Assembly chose, using rules of statutory construction. Accordingly, although I might prefer the outcome under the majority’s judgment, my fealty to the constitution, our precedent, and this court’s role in government require that I dissent from it.

*285
Motion for Reconsideration

{¶ 34} The state of Ohio has moved for reconsideration of this court’s judgment in State v. Gonzales, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405 (“Gonzales I”). Pursuant to S.CtPrac.R. 18.02, we have the authority to “correct decisions which, upon reflection, are deemed to have been made in error.” State ex rel. Huebner v. W. Jefferson Village Council, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1996). “We will not, however, grant reconsideration when a movant seeks merely to reargue the case at hand.” Dublin City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision, 139 Ohio St.3d 212, 2014-Ohio-1940, 11 N.E.3d 222, ¶ 9; S.Ct.Prac.R. 18.02(B) (“A motion for reconsideration shall not constitute a reargument of the case”).
{¶ 35} In an attempt to present an “obvious error,” see Dublin City Schools at ¶ 10, the state asserts that the court misapplied the rule of lenity and the canon of strict construction. The state contends that the lead opinion in Gonzales I applied the rule of lenity even though it found that the statute was unambiguous. In support, the state cites paragraphs 10 and 20 through 22 of Gonzales I. An examination of these paragraphs, however, exposes the fiction of the state’s assertion.
{¶ 36} The lead opinion’s reference to the rule of lenity in Gonzales I is limited to a general statement that the rule is used to interpret a statute when a statute is determined to be ambiguous. Id. at ¶ 10. In that opinion, the reference to the rule occurs before the discussion interpreting R.C. 2925.11(C)(4), the statute at issue in this case. Starkly absent from the lead opinion’s analysis of the statute is application of the rule of lenity. Id. at ¶ 20-22. That opinion clearly states that nothing in the statute is deemed ambiguous. Id. at ¶ 20, 22 (R.C. 2925.11(C)(4)(b) through (f) is “unambiguous on its face”). The rule of lenity is applied only when a statute is ambiguous. State v. Arnold, 61 Ohio St.3d 175, 178, 573 N.E.2d 1079 (1991). Moreover, the lead opinion in Gonzales I does not engage in any discussion or application of the rule of lenity when analyzing the statute. Therefore, there is no doubt that the lead opinion did not resolve the statute in favor of the defendant. Id. at ¶ 20-22.
{¶ 37} The state also argues that the court used a “canon of strict construction” to infer legislative intent. However, this argument is contradicted by the express language of the lead opinion in Gonzales I, which states, “The state fails to point to any ambiguity in the statute. Without that, we must simply apply the statute as it is written, without delving into legislative intent.” (Emphasis added.) Id. at ¶ 17.
{¶ 38} Accordingly, the state’s arguments are nothing more than red herrings. Failing to point to any obvious error, the state is merely seeking another bite at the apple. The precedent established in Gonzales I should not be overturned *286 without a thorough analysis under the tripartite test of Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, in a new case.
{¶ 39} Accordingly, I would deny the state’s motion for reconsideration. Nevertheless, because a majority of this court has granted reconsideration in this matter, I will address the merits.

Analysis of R.C. 2925.11(C)(1)

{¶ 40} The General Assembly enacted a general provision prohibiting any person from knowingly obtaining, possessing, or using a controlled substance or a controlled-substance analog. R.C. 2925.11(A). Penalties for doing so are based on the class and amount of the controlled substance or controlled-substance analog in an offender’s possession. R.C. 2925.11(C).
{¶ 41} At issue here is R.C. 2925.11(C)(4), which provides, “If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine.” Thereafter, possession of cocaine is categorized into a degree of felony depending on whether “the amount of the drug involved” equals or exceeds a specific number of grams but is less than a specific number of “grams of cocaine.” R.C. 2925.11(C)(4)(b) through (f).
{¶ 42} A court’s main objective is to determine and give effect to the legislative intent. State ex rel. Solomon v. Police & Firemen’s Disability & Pension Fund Bd. of Trustees, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). The intent of the General Assembly must be determined primarily from the language of the statute itself. Stewart v. Trumbull Cty. Bd. of Elections, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973).
{¶ 43} “When the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said.” Jones v. Action Coupling & Equip., Inc., 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing Symmes Twp. Bd. of Trustees v. Smyth, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). However, when statutory language is ambiguous, the rules of statutory interpretation must be applied to determine the intent of the legislature. Wingate v. Hordge, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979).
{¶ 44} The majority concludes that the statute is unambiguous and that the legislative intent is that the phrase “grams of cocaine” in the subdivision establishing the degree of the offense means “grams of a mixture of cocaine and fillers.” To reach this interpretation, however, the majority claims that the mixture of cocaine and adulterants is a compound. R.C. 2925.01(X) (cocaine includes “[a] salt, isomer or derivative * * * or a salt, compound, derivative, or preparation”). It therefore confuses the definition of “compound” with the *287 definition of “mixture.” Majority opinion at ¶ 10 (“ ‘compound’ means ‘something (as a substance * * *) that is formed by a union of * * * ingredients’ ”), quoting Webster’s Third New International Dictionary 466 (1986). In Gonzales I, the dissenting opinion concluded that “a compound is a mixture.” Id., 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405, ¶ 42 (O’Connor, C.J., dissenting).
{¶ 45} The majority is purposefully silent as to the actual effect of its decision and the dangerous precedent it creates, but astute readers of our opinions and those educated and knowledgeable about the rules of statutory construction will not be fooled. By reading the term “mixture” into the term “compound,” the majority abandons our strict rules of statutory construction, ignores definitions, and renders meaningless and superfluous the term “mixture” as used by the General Assembly in this provision and other provisions in the Revised Code.
{¶46} The legislature has not defined the terms “compound” or “mixture.” R.C. 1.42 states, “Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.” The majority’s analysis fails to interpret the term “compound” properly. A general dictionary recognizes its definition in the scientific field of chemistry as “a chemically distinct substance formed by union of two or more ingredients (as elements) in definite proportion by weight and with definite structural arrangement (water is a [compound] of oxygen and hydrogen).” Webster’s Third New International Dictionary 466 (2002). This definition is not interchangeable with the term “mixture,” which is defined as “a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence—usu. distinguished from * * * compound.” Id. at 1449.
{¶ 47} “ ‘[W]e may not restrict, constrict, qualify, narrow, enlarge, or abridge the General Assembly’s wording.’ ” Dillon v. Farmers Ins. of Columbus, Inc., 145 Ohio St.3d 133, 2015-Ohio-5407, 47 N.E.3d 794, ¶ 17, quoting State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn., 131 Ohio St.3d 478, 2012-Ohio-1484, 967 N.E.2d 193, ¶ 18. Instead, we are to give effect to “every word, phrase, sentence, and part of the statute,” Cama at ¶ 18-19, avoiding interpretations that would otherwise render a provision redundant, meaningless, or superfluous, id. at ¶ 19.
{¶ 48} The majority opinion neglects the effect of its conclusion that the substance created when cocaine and fillers are mixed is a compound. The only reasonable interpretation of the majority’s decision is that the majority implicitly concludes that the term “mixture” has no meaning separate and apart from the term “compound.” But the General Assembly has used both terms not only in *288 R.C. 2925.11(C)(4) but in numerous other statutes. See, e.g., R.C. 2925.01(D) and (I), 2925.03(C), 3719.41, and 3719.44.
{¶ 49} Accordingly, in every statute in which the General Assembly has chosen to use both “compound” and “mixture,” the effect of the majority’s conclusion renders the term “mixture” superfluous. This also means that when the legislature used the terms “compound” and “mixture” in the same sentence of a statute, the use of the term “mixture” was included in vain, not to accomplish a definite purpose. See State v. Wilson, 77 Ohio St.3d 334, 336, 673 N.E.2d 1347 (1997). This offends the well-established rule of statutory construction that “when language is inserted in a statute it is inserted to accomplish some definite purpose.” State ex rel. Cleveland Elec. Illum. Co. v. Euclid, 169 Ohio St. 476, 479, 159 N.E.2d 756 (1959). “ ‘The presumption always is, that every word in a statute is designed to have some effect, and hence the rule that, “in putting a construction upon any statute, every part shall be regarded, and it shall be so expounded, if practicable, as to give some effect to every part of it.” ’ ” (Emphasis sic.) Ford Motor Co. v. Ohio Bur. of Emp. Servs., 59 Ohio St.3d 188, 190, 571 N.E.2d 727 (1991), quoting Turley v. Turley, 11 Ohio St. 173, 179 (1860), quoting Commonwealth v. Alger, 61 Mass. 53, 89 (1851).
{¶ 50} Our long precedent of statutory construction establishes that “the General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code.” Meeks v. Papadopulos, 62 Ohio St.2d 187, 191-192, 404 N.E.2d 159 (1980), citing State ex rel. Darby v. Hadaway, 113 Ohio St. 658, 659, 150 N.E. 36 (1925). The use by the General Assembly of particular language in one part of a statute but not in another part demonstrates that it has chosen not to make that modification in the latter part of the statute. See Maggiore v. Kovach, 101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790, ¶ 27.
{¶ 51} While the General Assembly has used both terms in R.C. 2925.11, it has used the term “compound” without using the term “mixture” in other statutes. See R.C. 4123.68(C) (“Any industrial process involving the use of lead or its preparations or compounds”) and (D) (“Any industrial process involving the use of mercury or its preparations or compounds”); R.C. 5739.01(FFF) (“ ‘Drug’ means a compound, substance, or preparation, and any component of a compound, substance, or preparation * * * ”). Therefore, the legislature has demonstrated that it knows how to use these terms, and it has chosen to use only the term “compound” in R.C. 2925.01(X) to define “cocaine.”
{¶ 52} If the General Assembly had intended the degree-of-felony classifications to include “compound, mixture, preparation, or substance containing cocaine,” then it could have easily included that language in those provisions or changed the definition of “cocaine” to include “mixture.” But the legislature did *289 not. Instead, it limited the degree-of-felony classification to “grams of cocaine” only. “Cocaine,” of course, is limited by its definition in R.C. 2925.01(X), which does not include the term “mixture.” We should not add the term “mixture” to the definition by judicial fiat. See Clark v. Scarpelli 91 Ohio St.3d 271, 291, 744 N.E.2d 719 (2001) (Cook, J., concurring in part and dissenting in part) (“the role of a court is not to decide what the law should say; rather, the role of this court is to interpret what the law says as it has been written by the General Assembly ” [emphasis sic]). As succinctly stated by the court in Dillon, this analysis “simply gives effect to the statute as written.” 145 Ohio St.3d 133, 2015-Ohio-5407, 47 N.E.3d 794, ¶ 21.
{¶ 53} The majority contends that interpreting the phrase “of cocaine” in R.C. 2925.11(C)(4)(b) through (f) to mean only the drug, not a mixture, “would require us to insert the words ‘actual’ or ‘pure’ to describe the cocaine that is intended to be penalized by the statute.” Majority opinion at ¶ 13. But this assertion is untrue.
{¶ 54} The certified question recognizes that the issue is whether the state “[m]ust * * * prove that the weight of the cocaine meets the statutory threshold * * (Emphasis added.) 143 Ohio St.3d 1402, 2015-Ohio-2747, 34 N.E.3d 131. As argued by Gonzales, “if the relevant weight of cocaine exists in a ‘mixture,’ it really doesn’t matter if the mixture is 10%, 20%, 70% or 99% pure since the offense level is tethered to the weight of cocaine within the mixture, not purity per se.” (Emphasis sic.) Instead, when the statute is read as written, it requires that the state prove possession of five or more “grams of cocaine,” according to the definition of “cocaine” in R.C. 2925.01(X):
(1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;
(2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;
(3) A salt, compound, derivative, or preparation of a substance identified in division (X)(l) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine.
This definition does not include filler material. Therefore, the majority’s conjecture that an opposing interpretation of the statute requires insertion of the term *290 “purity” is merely an attempt to deflect from the fact that the majority has upended established rules of statutory construction to reach its result.
{¶ 55} The error of the majority’s analysis is also demonstrated when other provisions of the Revised Code are examined. The grammatical framework of the possession-of-cocaine statute is mirrored in other possession statutes. Possession of hashish, R.C. 2925.11(C)(7), and trafficking of hashish, R.C. 2925.03(C)(7), and L.S.D., R.C. 2925.03(C)(5), contain the same language: “If the drug involved in the violation is * * * a compound, mixture, preparation, or substance containing [the respective drug] * * Further, the degree-of-felony classifications categorize the violations based on whether “the amount of the drug involved” was a specific weight of hashish, R.C. 2925.11(C)(7) and 2925.03(C)(7), or of L.S.D., R.C. 2925.03(C)(5).
{¶ 56} “Hashish” is defined as “the resin or a preparation of the resin contained in marihuana, whether in solid form or in a liquid concentrate, liquid extract, or liquid distillate form.” R.C. 2925.01(Z). “L.S.D.” is defined as “lysergic acid diethylamide.” R.C. 2925.01(Y). Accordingly, it is only the drugs hashish or L.S.D., as defined, that the legislature intended to be quantified to determine the degree of felony for the violation. Nevertheless, the majority’s interpretation allows for the degree of felony for possession of cocaine and trafficking in cocaine to be quantified with something other than cocaine, as defined. This is clearly not the intent of the legislature.
{¶ 57} In addition to my disagreement with the majority’s interpretation of the statute, I also do not agree that the language of the statute is unambiguous. When the language prohibiting possession of cocaine is read in conjunction with the corresponding penalty provision, the statute is ambiguous. See Symmes, 87 Ohio St.3d at 553, 721 N.E.2d 1057 (conflict among the appellate courts regarding the meaning of statutory phrase suggests that the language is ambiguous). Moreover, the conflicting interpretations advanced by the lead opinion and the dissent in Gonzales I, 150 Ohio St.3d 261, 2016-Ohio-8319, 81 N.E.3d 405, are strong support for concluding that the statute is ambiguous.
{¶ 58} When a statute is ambiguous, the court may consider the matters listed in R.C. 1.49 to discern the legislature’s intent: the object that the legislature sought to attain, the circumstances surrounding the law’s enactment, the law’s legislative history, preceding law, the consequences of construing the law in a certain way, and the statute’s administrative construction.
{¶ 59} “Although this court is not bound by” the analyses prepared by the Ohio Legislative Service Commission, “we may refer to them when we find them helpful and objective.” Meeks, 62 Ohio St.2d at 191, 404 N.E.2d 159. The Ohio Legislative Service Commission recognized that one aspect of 2011 Am.Sub.H.B. No. 86 (“H.B. 86”) was to eliminate “the distinction between the criminal *291 penalties provided for drug offenses involving crack cocaine and * * * powder cocaine,” Ohio Legislative Service Commission, Am.Sub.H.B. 86, Bill Analysis as Introduced, at 4, available at http://www.lsc.ohio.gov/analysesl29/h0086-i-129.pdf (accessed Feb. 24, 2017), but a second aspect of the law was to remove the presumption of a term of incarceration for fourth-degree-felony drug offenses, Ohio Legislative Service Commission, Am.Sub.H.B. 86, Final Analysis (“Final Analysis”), at 8, available at http://www.lsc.ohio.gov/analysesl29/ll-hb86-129.pdf (accessed Feb. 24, 2017).
{¶ 60} Heralded as a significant piece of legislation that would drastically reduce the prison population by ensuring that low-level, nonviolent drug offenders would not be subjected to mandatory prison terms, the director of the Department of Rehabilitation and Correction called H.B. 86 “a day of hope.” Johnson, Law to Cut Prison Population, Columbus Dispatch (June 30, 2011) IB.
{¶ 61} The statute signals the legislature’s intent to reduce the prison population by eliminating presumptive prison sentences for some nonviolent drug offenders: it requires that prosecutors prove the “grams of cocaine” and creates a presumption of incarceration for only those drug offenders who possess the specific number of grams of “cocaine” identified in R.C. 2925.11(C)(4), not those drug offenders whose product has only “some detectable amount” of cocaine. Compare State v. Chandler, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, syllabus (under R.C. 2925.03(C)(4)(g), substance offered for sale must contain some detectable amount of a controlled substance before an offender can be sentenced as a major drug offender).
{¶ 62} Additionally, R.C' 1.49 permits this court to examine preceding law to determine legislative intent. In previous iterations of R.C. 2925.01, “crack cocaine” and “cocaine” were separately defined. The now-deleted definition of “crack cocaine” was “a compound, mixture, preparation, or substance that is or contains any amount of cocaine that is analytically identified as the base form of cocaine or that is in a form that resembles rocks or pebbles generally intended for individual use.” Former R.C. 2925.01(GG), 2008 Sub.H.B. No. 195. The definition of “cocaine” remains unchanged; it does not include the term “mixture.”
{¶ 63} These definitions demonstrate that the legislature knew how to define the term “crack cocaine” to.include a mixture and to define the term “cocaine” without using the term “mixture.” The General Assembly could have amended the definition of “cocaine” to include the term “mixture” when it deleted the definition of “crack cocaine,” but it did not. Accordingly, the legislature intended to not include the term “mixture” in its definition of “cocaine.” R.C. 2925.01(X).
{¶ 64} This interpretation of the statute is also consistent with the intent to eliminate the sentencing disparity. Final Analysis at 9. The General Assembly’s *292 intent was to penalize offenders for the amount of the drug cocaine regardless of form. Penalizing an offender for the weight of cocaine, and not the filler material, ensures that offenders are penalized equally. An offender who possesses five grams of cocaine should receive the same penalty as the offender who has five grams of cocaine and ten grams of filler material.
{¶ 65} The rule of lenity, codified in R.C. 2901.04(A), must also be considered when a statute is ambiguous. It provides that sections of the Revised Code that define penalties “shall be strictly construed against the state, and liberally construed in favor of the accused.” R.C. 2901.04(A). The rule provides that a court will not interpret a criminal statute to increase the penalty it imposes on a defendant if the intended scope of the statute is ambiguous. See Moskal v. United States, 498 U.S. 103, 107-108, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990), quoting Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), quoting Lewis v. United States, 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (“ ‘the “touchstone” of the rule of lenity “is statutory ambiguity” ’ ”); see also Arnold, 61 Ohio St.3d at 178, 573 N.E.2d 1079.
{¶ 66} Because the statute is ambiguous, the rule of lenity requires that the statute be construed so that it applies only to conduct that is clearly proscribed. Possession of cocaine, or of a “compound, mixture, substance, or preparation” containing cocaine, is proscribed. R.C. 2925.11(C)(4). Possession is a fifth-degree felony. R.C. 2925.11(C)(4)(a). However, if the cocaine equals or exceeds five grams, possession is penalized as a fourth-, third-, second-, or first-degree felony, depending on the amount of the drug, not a compound, mixture, substance, or preparation containing the drug, that is in the offender’s possession. In this instance, the degree-of-felony classification for possession of cocaine can only be determined based on the grams of cocaine, as defined in R.C. 2925.01(X), and not filler material.
{¶ 67} The state of Ohio argues that “the drafters made a probable slight faux pas ” in amending the penalty provision and to read the statute in any way other than that the General Assembly requires a mere “aggregate weight” test “belies the legislative intent of the law.” This argument demonstrates the weakness of the state’s position in concluding that the statute is not ambiguous. A plain and ordinary meaning would not need to be categorized as a blunder or a gaffe. However, the “faux pas” argument is not credible, because the General Assembly used the same grammatical structure to define the level of felony penalties for possession of hashish and cocaine and trafficking in hashish, L.S.D., and cocaine. But the legislature did not use the same grammatical structure for possession of marijuana and heroin, see R.C. 2925.11(C)(3) and (6), and trafficking in marijuana and heroin, see R.C. 2925.03(C)(3) and (6). Therefore, it is not a “slight faux pas the same language is used throughout the statute in such a manner.
*293 {¶ 68} The state of Ohio also argues that interpreting the statute to require proof of the grams of cocaine as defined presents problems because no lab in Ohio conducts a quantitative or purity analysis of substances. However, the confines of statutory construction do not afford the judicial branch latitude to consider policy matters or outcome metrics in determining the meaning of a statute. Our interpretation of a statute cannot be concerned with whether the General Assembly issued an unfunded mandate. Our role is simply to give effect to the legislative intent as divined from the words used by the legislature. Solomon, 72 Ohio St.3d at 65, 647 N.E.2d 486.
{¶ 69} The argument of the attorney general, as amicus curiae, that “[t]he mere fact that the State’s premiere [sic] crime laboratory is not equipped to perform this analysis suggests that the General Assembly never intended to require purity testing in cocaine prosecutions,” is also unconvincing. In contrast to the state’s conjecture regarding the General Assembly’s intent, the intent of that body and the actions of the crime laboratory are not always aligned. The “state’s premier crime laboratory” stopped testing minor-misdemeanor quantities of marijuana in March 2016. Lemon, BCI’s End to Free Testing of Pot Starts Questions, Toledo Blade (Feb. 13, 2017), available at http://www.toledoblade.com/ Police-Fire/2017/02/13/End-to-free-testing-of-pot-starts-questions.html (accessed Feb. 28, 2017). However, the General Assembly has not repealed minor-misdemeanor possession of marijuana. See R.C. 2925.11(C)(3)(a).
{¶ 70} Rightly or wrongly, the General Assembly used the specific language “grams of cocaine,” without any qualifiers. If the General Assembly had intended that the penalty for possession of cocaine depended on the weight for the mixture containing the cocaine, and not just the drug cocaine, the General Assembly had the opportunity to specify that requirement. Further, the legislature has the ability to amend the definition of “cocaine” to include the term “mixture,” similar to the former definition of “crack cocaine,” or amend the penalty provisions to include this language or delete the “of cocaine” language. See R.C. 2925.11(C)(3)(b) through (g) (possession of marijuana); R.C. 2925.11(C)(6)(b) through (f) (possession of heroin).
{¶ 71} “It is not the role of the courts ‘to establish legislative policies or to second-guess the General Assembly’s policy choices.’ ” Stetter v. R.J. Corman Derailment Servs., L.L.C., 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting Groch, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. This court must respect the fact that the constitutional authority to legislate was conferred solely on the General Assembly. Article II, Section 1, Ohio Constitution. Consequently, “the only sentence which a trial court may impose is that provided for by statute. A court has no power to substitute a different sentence for that provided for by statute or one that is either greater or lesser than that *294 provided for by law.” Colegrove v. Burns, 175 Ohio St. 437, 438, 195 N.E.2d 811 (1964). Today, the majority turns its back on these treasured principles of our limited role in government to legislate from the bench.
{¶ 72} Therefore, I dissent.